## Phillips v. Police Pension Commission

*Ernest D. Preate*, for plaintiff.

*James W. McNulty, David J. Reedy, Jr.*, and *John J. Scott*, for defendants.

*James G. Colleran*, for amicus curiae.

HOBAN, P. J., March 4, 1955.—This is a petition on behalf of David G. Phillips, a member of the Police Department of the City of Scranton to ascertain his rights and status as a retired member of the Bureau of Police of the City of Scranton and his rights under the various ordinances providing a pension system for the members of the bureau of police. Since testimony

was taken on some disputed questions of fact, it becomes necessary therefore to make certain findings.

## Findings of Fact

1. David G. Phillips was appointed as clerk to the Superintendent of Police of the Bureau of Police of the City of Scranton and entered upon his service as such on November 1, 1920.

2. As such clerk to the bureau of police he was a regular member of the bureau of police designated as a member of such bureau by ordinance: File of the Select Council No. 2, 1907, sec. 11.

3. By the rules of the Civil Service Commission of the City of Scranton in force as of the time of his appointment, the position so held by plaintiff was listed as in the competitive class and graded in the clerical service of the city as grade 3.

4. On November 1, 1932, plaintiff was appointed "and/or promoted" to be a regular patrolman in the Bureau of Police of the City of Scranton.

5. Plaintiff remained in continuous service as a regular patrolman and detective in the Bureau of Police of the City of Scranton until September 1, 1951, when he entered upon an authorized leave of absence, the duration of which was to be for a period of one year.

6. At the same time at which he applied for leave of absence as aforesaid, plaintiff applied to be placed upon the retired list in the bureau of police for the reason that he had served continuously in said bureau, giving his time exclusively therefor for a period of 30 years and 9 months.

7. The application of plaintiff for retirement was so processed that on March 15, 1952, the members of the Police Pension Commission of the City of Scranton certified that they recognize the right of plaintiff to receive a pension when he reaches the age of 55 years.

8. Plaintiff was born in the year 1902 and hence will not reach the age of 55 until the year 1957.

9. The pertinent city ordinances to be considered are as follows:

(a) File of Select Council No. 2, 1907. An ordinance establishing the Bureau of Police in the City of Scranton.

"Section 1. Be it ordained, etc., that there is hereby established a Bureau of Police in the Department of Public Safety of the City of Scranton which shall consist of one Superintendent of the Bureau of Police, . . . one Clerk to the Superintendent of the Bureau . . ., and

"Section 11. The Clerk to the Superintendent of the Bureau shall be appointed by the Director of the Department of Public Safety and shall perform any duties that may be assigned by the Superintendent of the Bureau."

(b) Ordinance, File of the Council No. 47, 1911, providing for a pension fund for the members of the bureau of police, etc.

"Section 3. This fund shall be used solely for the pensioning of the regular, full-paid uniformed force of the Bureau of Police, and for the regular salaried detectives attached to the Bureau of Police, and only those employes of the City shall be eligible to its benefits who give their whole time exclusively to the work of the Bureau of Police."

(c) File of the Council No. 14, 1917, amending section 6 of File of the Council No. 47, to read as follows:
. . . "The uniform pension which shall be paid to any pensioned or retired policeman or detective who shall become members of the Bureau of Police or Detectives after the passage and approval of this ordinance . . . thereafter shall be paid one-half of the salary which said policeman or detective received from

the City at the time he ceased from active duty in the Bureau of Police or Detectives."

(*d*) File of the Council No. 72, 1919, amending section 7 of the Ordinance, File of the Council No. 47, 1911, to read as follows:

"Section 7. Every policeman who has served continuously as a regular full-paid member of the Bureau of Police or Detectives, should the latter bureau be hereafter created, for twenty-five (25) years, shall be entitled to be retired at his own request on a pension. Suspension from duty or leave of absence under one year shall not affect continuous service."

(*e*) Ordinance, File of the Council No. 9, 1922, creating a pension board and pension fund for the pensioning of employees of the City of Scranton except beneficiaries of the police and fire pension funds.

"Section 7. This ordinance shall apply to all persons employed in any capacity by or holding positions under the City of Scranton . . . except also all of the members or employees of the Bureau of Fire and the Bureau of Police."

10. From and after the appointment of plaintiff as clerk to the superintendent of police to and including the time of his appointment in 1932 as a patrolman, plaintiff performed all the duties required of him by the superintendent of police, including duties in the investigation of crime, accompanying police officers and detectives on investigations, participating in the arrest of criminals, interrogating witnesses and recording and transcribing statements of persons accused of crime and other witnesses, acting as prosecuting witness in the police courts of the City of Scranton and the criminal courts of the County of Lackawanna, and during all of his services was provided by the superintendent of police with a police badge as evidence of identification and authority.

## Discussion

It cannot be doubted that from the beginning of his service with the city, Phillips was a regular member of the bureau of police. The job of clerk to the superintendent is designated in the ordinance creating the bureau as one of the specifically enumerated positions in the bureau. Appointment to the job is made by the director of the department of public safety and the jobholder is subject to the orders of the superintendent of the bureau. The mere fact that a civil service commission rule for purposes of classifying jobs in the competitive civil service classifies the job as a graded clerical job did not and could not remove the position from the bureau of police.

It is likewise apparent and it cannot be denied that Phillips from November 1, 1920 until August 1, 1951, gave his whole time exclusively to the work of the bureau of police. Nor, of course, can it be questioned that his total service up to the time of his application for leave of absence and retirement exceeded 30 years.

In this respect it is quite apparent that he has qualified for retirement benefits under the ordinances in effect at the time he entered upon employment with the bureau of police.

The city, however, contends that since he was not a member of the so-called uniformed force or official detective force until November 1, 1932, his police pension rights could not commence until that date. We think to accept this purely technical interpretation of the ordinances would run counter to the whole intent and purpose of the various retirement systems provided for all city employes. It is a fact, but in our opinion an irrelevant one, that until 1932 Phillips paid an assessment from his wages to the general city employes' retirement fund created by the ordinance of 1922, but clearly under the provisions of that ordi-

nance he was not entitled to membership in that fund, because as we have seen, he was a member of the bureau of police and members of the bureau of police are specifically excluded from membership in that fund. Upon his appointment as a patrolman he began to pay into the police pension fund, and again it is a fact, although we believe it to be an irrelevant one, that at the time of his application for pension he paid into the police pension fund an amount sufficient to meet the assessments he would have to pay from November 1, 1920, to November 1, 1932, if he had been correctly considered a member of the police pension fund. Whether or not for those 12 years he was a member of the so-called uniformed force or not, it is quite apparent that he was engaged in the continual performance of police duties pertinent to the preservation of order, apprehension of criminals and their prosecution. Certainly in the ordinances subsequent to that of 1911 we find no limitation upon membership in the force, uniformed or otherwise, but there is continual reference to the eligibility for pensions of "members" of the bureau of police. When we read the ordinance creating the pension funds for policemen and firemen, together with the one creating the fund for the general city employes, we would have to come to the conclusion, to support the city's theory, that Phillips was about the only employe in the City of Scranton who would not be eligible to membership in any fund, a conclusion which we believe is patently absurd.

In our opinion, therefore, Phillips was properly considered a member of the bureau of police and properly eligible from the date of his employment to membership in the police pension fund. He is, therefore, entitled upon his own request to be placed on pension after 25 years service, in accordance with the terms

of the ordinances in effect as of the date of his employment, that is to say, the Ordinance of 1911 as amended by the Ordinances of 1917 and 1919.

Phillips' appointment to the department and the ordinances in effect at the time established his right to pension as a matter of contract. See James v. Police Pension Commission, 55 Lack. Jur. 97; 87 D. & C. 454; Kane v. Policemen's Relief and Pension Fund of Pittsburgh, 336 Pa. 540; Baker v. Retirement Board of Allegheny Co., 374 Pa. 165.

As to this phase of the case, the city contends that an ordinance of 1936, subsequently superseded by an ordinance of 1950, added to the service requirements an age limitation, limiting the eligibility for pensions to retired policemen only upon attaining the age of 55. As to this we can only say that under the contract theory as enumerated in the James case, supra, and particularly in Baker v. Retirement Board, supra, a contract right running in favor of Phillips as of the time of his employment could not be changed by subsequent ordinance without his consent. A change in the eligibility requirements to establish a given age is not simply a regulatory or administrative change; it is in fact a change in substance and as to Phillips it must be held to be ineffective.

In our opinion, therefore, Phillips, having completed more than the necessary number of years of exclusive service to the work of the bureau of police, was entitled upon his own application to retirement benefits accruing to him from the police pension fund as of the date of his application and his separation from the service.

### Conclusions of Law

1. Plaintiff during the period November 1, 1920, to August 1, 1951, was a regular member of the bureau of police in the City of Scranton and as such was entitled to membership in the police pension fund

established for the benefit of the members of the bureau of police.

2. The conditions of membership of plaintiff in the police pension fund so far as they pertain to plaintiff as of the date of his employment, establishes his right to retirement upon his own application after the completion of 25 years service devoted exclusively to the work of the bureau of police.

3. As of August 1, 1951, plaintiff had completed all necessary requirements and qualified for retirement and for retirement benefits payable to him at the rate of one-half of his pay as of the last year of his employment.

### Declaratory Judgment

Now, March 4, 1955, it is ordered, adjudged and decreed that as of September 1, 1951, plaintiff, David G. Phillips, having fulfilled the conditions prescribed by Ordinance, File of Council No. 72, year 1919, of the City of Scranton, and having attained eligibility for retirement pay from the Police Pension System of said City of Scranton, is entitled to retirement pay at the established rate for a retired officer of his pay, grade and status from September 1, 1951.

### ON EXCEPTIONS TO ADJUDICATION

HOBAN, P. J., July 13, 1955.—In declaratory judgment proceedings, because some questions of fact were presented, testimony was taken before Hoban, P. J., as the hearing judge, who subsequently rendered an adjudication and a declaratory judgment. The question involved the right of plaintiff to retirement pay under his separation from the service of the City of Scranton as a member of the bureau of police of more than 30 years standing. Exceptions to the findings of fact, conclusions of law and the declaratory judgment were filed by defendants and the Police Pension Asso-

ciation, an association of the members of the bureau of police, joined in the exceptions as amicus curiae and joined in the brief in support of the exceptions.

We think the hearing judge has correctly analyzed the factual situation and has applied the law on a basis consistent with the intent of the laws authorizing the creation of retirement or "pension" funds for municipal civil service. As pointed out in some recent cases, these funds are set up for the purpose of providing retirement pay, not "pensions" in the sense of gratuities. The right of the employe to participate is one of contract incident to his employment, and he may not be divested of any of his rights by unilateral action of the municipality or of the legislature. See Baker v. Retirement Board of Allegheny Co., 374 Pa. 165; Hickey v. Pittsburgh Pension Board, 378 Pa. 300.

As observed by the hearing judge, if Phillips was not an eligible member of the police pension fund, he would be the only general civil service employe of the city excluded from participation in any fund, at least for the period from 1920 to 1932, when he was appointed as a regular patrolman, a situation obviously not contemplated in view of the overall system of retirement provided under the various city ordinances.

Under our view, Phillips as a member of the bureau of police clearly qualified as eligible for membership in the police pension fund in spite of an abortive effort to place him in another fund, because of the ambiguities in the ordinances setting up the respective funds. If, during the early years of his service, Phillips was not in uniform, he was in fact habitually employed in police detective work, and his whole time was given exclusively to the work of the bureau of police. Certainly he was definitely excluded from the pension fund set up by the ordinance of 1922, creating a retirement system for employes in the general city service other than

the bureaus of fire and police. It would seem to be a shocking inequity to have Phillips excluded from any fund for the period 1920 to 1932 because of a purely technical construction of the ordinance, in the face of his faithful service to the bureau of police during that time.

The undoubted interest of the Police Pension Association is in the maintenance of the integrity of the police pension fund and thus in preventing the invasion of the fund by ineligible pensioners. As to this, we must observe that the police pension fund is not actuarial. Therefore, the fund in the hands of the commission may be subject to substantial impairment at any time by an above average rate of retirement, by a diminishing of income to the fund from gratuitous contributions or sources other than city taxes and members' assessments. This possibility evidently was in contemplation of the legislature, for section 2 of the Act of August 17, 1951, P. L. 1254, 53 PS §10809.6, made it mandatory on cities of the second class A to provide sufficient funds by taxation in any one year to supplement income from pension fund investments, members' contributions and payments from tax sources other than city taxation, by appropriation of sufficient money from city taxes to pay in full all retirement allowances payable during such year. Thus the contract obligation to provide retirement pay earned as a result of longevity or disability incurred in city service, is backed up by the broad taxing power of the city and is not dependent upon mutations of a non-actuarial reserve.

Accordingly the decision of the hearing judge and the declaratory judgment entered by him are affirmed.

Now, July 13, 1955, exceptions to the adjudication and declaratory judgment entered in the above captioned case are overruled, and the declaratory judgment as entered is affirmed.