McBride *v.* Allegheny County Retirement
Board et al., Appellants.

Argued March 21, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Wm. Alvah Stewart, Jr.,* Assistant County Solicitor, with him *Charles Alvin Jones,* County Solicitor, for appellants.

*H. D. Hirsh,* with him *Louis Abromson,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, May 9, 1938:

Plaintiff, an employee of Allegheny County from 1910 until June 16, 1932, retired. Under pertinent legislation he received retirement pay until August 1, 1933, when it was suspended by the Retirement Board for the reason that since that date he was continuously employed by the Commonwealth of Pennsylvania. A petition for mandamus was filed to compel the Board to resume his retirement allowance and to pay the sums due

from August 1st to date. The Board justified suspension under the Act of May 22, 1933, P. L. 840.[1]

Petitioner retired under the Act of May 2, 1929, P. L. 1278.[2] Under relevant acts, county employees were required to contribute each month to the retirement fund a certain percentage of their salary, and county employees who might leave the service of the county before becoming eligible for retirement could receive back their contributions from the county. Employees were entitled to retirement pay when they attained the age of 50, had been employed by the county for 20 years, and had contributed to the fund as required by the Act.

The court below sustained plaintiff's demurrer to respondent's return for the reason that the Act of 1933 was not applicable, hence this appeal.

We endeavored to demonstrate in *Retirement Board of Allegheny County v. McGovern et al., Commrs.*, 316 Pa. 161, the position of employees who were members of the county retirement system, stating at p. 169: "Retirement pay is defined as 'adjusted compensation' presently earned, which, with contributions from employees, is payable in the future. The compensation is earned in the present, payable in the future to an employee, provided he possesses the qualifications required by the act, and complies with the terms, conditions, and regulations imposed on the receipt of retirement pay. Until

---

[1] The Act of 1933, amending the Act of May 2, 1929, P. L. 1278, provides: "If any member of the retirement system is receiving a retirement allowance and he or she shall or may hereafter be employed by the government of the United States, or the Commonwealth of Pennsylvania, or any political subdivision thereof, then the retirement board shall, and is hereby given the authority to, suspend the retirement allowance to such member of the retirement system during such employment."

[2] Superseding the Acts of May 11, 1915, P. L. 285, and May 8, 1919, P. L. 138, establishing a retirement system for employees of counties of the second, third, fourth, fifth, sixth, seventh and eighth classes.

an employee has earned his retirement pay, or until the time arrives when he may retire, his retirement pay is but an inchoate right; but when the conditions are satisfied, at that time retirement pay becomes a vested right of which the person entitled thereto cannot be deprived: it has ripened into a full contractual obligation." Among the conditions of the several retirement systems upon which retirement pay may be based are contributions by the employee of a portion of his salary to the retirement fund as required in the act by which he is governed from the time he enters or joins the retirement system, whether then entitled to retire or not;[3] service in the particular unit of government for the required span of years, here twenty; finally he must reach superannuation age, here 50, if he was under that age when he joined the retirement system. An employee fulfilling these conditions then has a vested interest in retirement pay which cannot be destroyed, weakened or departed from by subsequent legislation. Neither dismissal from service or office, nor any involuntary removal can affect this vested right to retirement pay. We endeavored to specifically hold in the *McGovern* case that eligibility for retirement pay is complete as soon as an employee or member of the retirement system has satisfied the conditions requisite for retirement, *whether*

---

[3] As an illustration of the application of this rule: The retirement system for the State Motor Police was established by the Act of June 29, 1937, P. L. 2423, fixing the superannuation age at 60 for the year 1938, and providing for compulsory membership. An employee past 60 could make one payment and apply for retirement. His right to retirement pay would then mature as a fixed and vested right. So an employee becoming a member within a few years of the superannuation age would make contributions for the remaining years and become eligible for retirement pay. The right would be fixed and vested when he reached the required age. The system established by the Act must have a beginning as pointed out in the *McGovern* case, p. 168. This would be applicable also to members of the teachers' retirement system, and those under other retirement systems similarly situated.

*the employee chooses to retire immediately or to continue in active service.* His rights to such pay are fixed as of the time he attained eligibility. Until retirement pay is earned as above described the right is inchoate. During this period retirement pay is being built up. The inchoate right becomes a complete vested right when the conditions connected with the particular retirement system are complied with. This right cannot be thereafter disturbed by legislation. We reiterated this thought in the *Teachers' Tenure Act Cases,* 329 Pa. 213.

In *Lynch v. United States,* 292 U. S. 571, the plaintiff was a beneficiary under an insurance policy issued under the War Risk Insurance Act. The insured paid the monthly premiums prescribed under the Act. In an opinion by BRANDEIS, J., the court held the War Risk Insurance policies contracts of the United States. "True, these contracts, unlike others, were not entered into by the United States for a business purpose. . . . In order to effect a benevolent purpose heavy burdens were assumed by the Government. But the policies, although not entered into for gain, are legal obligations of the same dignity as other contracts of the United States and possess the same legal incidents." As to whether a right to disclaim liability under the policies had been expressly reserved to the legislative, the court said: "In order to promote efficiency in administration and justice in the distribution of War Risk Insurance benefits, the Administration was given power to prescribe the form of policies and to make regulations. The form prescribed provided that the policy should be subject to all amendments to the original Act, to all regulations then in force or thereafter adopted. . . . But no power to curtail the amount of the benefits which Congress contracted to pay was reserved to Congress; and none could be given by any regulation promulgated by the Administrator." It was accordingly held that a subsequent statute denying the government's obligation

under these policies was unconstitutional as in violation of the Fifth Amendment. The court said at p. 579: "Valid contracts are property, whether the obligor be a private individual, a municipality, a State or the United States. . . ." The court said that due process prevented the United States from annulling these contracts, that "Congress was without power to reduce expenditures by abrogating contractual obligations of the United States."

It is well established that the constitutional prohibition against impairment of contracts applies to the State or its subdivisions as obligor. See *Lynch v. United States,* supra. This Court recently assumed this point in the case of *Beloff v. Margiotti,* 328 Pa. 432, and in *Clark v. Philadelphia,* 328 Pa. 521.

So strong is this vested right it has been held that the contract clause of the Federal Constitution forbids impairment by the states, not only by statute, but also by amendment to or change of the state constitution: *Central of Georgia Railway Co. v. Wright,* 248 U. S. 525; *Fisk v. Jefferson Police Jury,* 116 U. S. 131; *New Orleans Gas Co. v. Louisiana Light Co.,* 115 U. S. 650; *Pacific Railroad Co. v. Maguire,* 20 Wall. 36; *Railroad Co. v. McClure,* 10 Wall. 511, 515.

But, it is urged that within the Act there is a reservation of power to alter the retirement system and to amend the Act; that this reservation prevents what would otherwise be a violation of the contract clause offensive to state and federal constitutions. The Act of 1929, Section 315, substantially re-enacting Section 5 of the Act of 1919, provides that the Board "may adopt, amend, revise and abolish, in its discretion, such regulations, not inconsistent with law, as it deems necessary." As we pointed out in the *McGovern* case: "The legislature may from time to time, within the confines of that established relation, alter, change, amend, and render intact the actuarial soundness of the system so as to strengthen its fibers in any way it sees fit. Changes in

details, such as length of service required, contributions needed, and age requirements, to keep the fund on sound actuarial practices, are essential. Flexibility in component parts is a paramount necessity to guard against changed conditions and to permit keeping abreast with actuarial science. The basis is contribution from the county or state and from employee members." The Board may from time to time adopt improved administrative methods,—technical changes in detail,—and may, while the employee's right is inchoate, adopt such regulation for the betterment of the retirement fund's security. It may increase payments or require other actuarial changes to protect the established principal, but as to employees who have through time built up or acquired their right to retirement pay, on the assurance from the government that it would be fully met, the government must understand that a definite fixed obligation has been assumed.

The Board also argues that without reference to the Act of 1933, one in active duty is not eligible for retirement payments, and refers to *People ex rel. Luthardt v. Retirement Board*, 273 Ill. App. 387. Where one has been employed by one of the units of government, has been placed upon the retired list, and is then re-employed by the same political unit, there is much room for argument that he should not be entitled to receive a retirement allowance and compensation on his return to service. These laws must be construed equitably in the interest of the State and the employee. It is evident the Retirement Act did not intend a different result, and that one re-employed in the same position from which he had retired cannot be considered "retired." Nor would he be retired if employed by the same unit of government. But here McBride was not re-employed by his former employer, the county; he was employed by a different unit, the State. The importance of this distinction is illustrated by *Homan v. Mackey et al.*, 295 Pa. 82, in which the Court held plaintiff's being in the em-

ploy of the Superior Court was no legal answer to his application for a "pension" to which he was entitled as city employee under the applicable statute. We held that though afterwards actively employed in another capacity he was none the less "retired" as to his previous position.

Retirement pay is a part of the compensation for services rendered during active employment. Plaintiff's rights under the Retirement Act, having vested upon his becoming eligible for retirement, could not be impaired by legislation. Upon subsequently accepting a position with a different branch of the State government his rights to retirement pay were not waived. Accepting employment by the State is not a waiver of retirement rights. If the State may constitutionally provide that an individual's rights are to be extinguished as here, conceivably the State may so increase the number of contingencies upon which the employees' interest shall cease, as to actually force a surrender of all rights.

Our Act establishing the county employees' retirement system, and also the acts providing for retirement of State employees, employees of cities of the first class, teachers, and motor police, recognize the employee as being a party to the contract.

In many other states the same conclusion as that reached by this Court in the *McGovern* case has been adopted. *Cobbs v. Home Ins. Co. of N. Y.*, 18 Ala. App. 206, held that a pension fund for firemen was not a gratuity, but part of the stipulated consideration for which they contracted and served, and that thus a tax for the benefit of the pension fund was valid.

A case closely analogous to the present case, *Roddy v. Valentine*, 268 N. Y. 228, dealt with a police pension fund established under the New York City charter, augmented by 2% of the monthly pay of each member of the police force deducted from his salary by the comptroller and paid into the fund. Plaintiff had retired under the Act upon satisfying the requisites for retire-

ment (attaining the age of 55 and serving 20 years). The Act provided that the pension was not to be "revoked, repealed or diminished." Statutes subsequent to plaintiff's retirement provided that if any person, after retirement from the civil service of the State, or of any municipal corporation or political subdivision of the State, should accept any office thereafter in the civil service of the State, municipal corporation, or political subdivision of the State, his pension should be suspended during such employment. Later plaintiff was employed as Chief of Police of Long Branch, N. Y. During this employment his pension was suspended. The court held that plaintiff could recover the amount of the suspended payments. The court said, and we agree: "We may concede an incongruity in plaintiff's drawing a pension as a retired policeman and at the same time a salary as an active policeman in a neighboring city. That, however, was a right granted, or at least not denied to him under Section 1560 of the charter, when he retired. We take the statute as we find it." See also *Graef v. Department of Health,* 227 N. Y. S. 82.

In *Trotzier v. McElroy et al.,* 182 Ga. 719, it was held that where a pensioner contributing a certain percentage of his salary to the pension fund has retired the legislature may not subsequently reduce the amount of his monthly pension. See also *Lage v. City of Marshalltown,* 212 Iowa 53, 56. It was held that pensions are not gratuities when the services for which they are allowed are rendered after the enactment of the pension legislation in *State v. Love,* 89 Neb. 149, 154; *State ex rel. Gorozyca v. City of Minneapolis,* 174 Minn. 594, 597; *Stevens v. Minneapolis Fire Department Relief Assn.,* 124 Minn. 381.

*State ex rel. Holton v. City of Tampa,* 119 Fla. 556, held that the right of an employee became vested "by reason of his having fully performed all that he was required to do under the terms of his employment as a condition precedent to his having a pension allowed to him.

. . . So any statute undertaking to entirely deprive him of his pension rights, or to so diminish the amount of his pension as to make it merely one in name only, would be plainly unconstitutional as a deprivation of [his] vested right. . . ."

The court below was correct in sustaining appellee's demurrer to the return to the petition, not because Section 326 of the Act of 1933 is inapplicable to appellee, but for the reasons set forth in this opinion. The validity of the section as applied prospectively to one becoming eligible for retirement in the future, is not here decided. That question will be disposed of when a competent case arises.

Judgment on the demurrer is affirmed; costs to be paid by appellants.