J. Frank McKenna, Jr. et al., Plaintiffs *v.* Commonwealth of Pennsylvania, State Employees' Retirement Board et al., Defendants.

Argued April 8, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, CRAIG, MACPHAIL and WILLIAMS, JR. Judge BLATT did not participate.

*John H. Bingler, Jr.,* with him *J. Frank McKenna, III,* and *Jerome J. Pottmeyer, III,* of *Thorp, Reed & Armstrong,* for plaintiffs.

*Raymond Kleiman,* with him *Norman J. Watkins,* Deputy Attorneys General, for defendant, Commonwealth of Pennsylvania.

*Thomas J. Mangan, Jr.*, with him *Judd N. Poffinberger*, and *David L. Feigenbaum*, of *Kirkpatrick, Lockhart, Johnson & Hutchison*, for Amicus Curiae, Pennsylvania Bar Association.

OPINION BY JUDGE WILLIAMS, JR., October 23, 1980:

This is a class action requesting this Court to determine the validity of certain legislative modifications of the state employees' retirement program or the validity of the administrative application of those modifications insofar as they relate to the retirement pensions of the named plaintiffs and others similarly situated.

The plaintiffs are two judges retired from the Court of Common Pleas of Allegheny County, the Honorable J. Frank McKenna, Jr., and the Honorable Frederic G. Weir. They originated this suit in this Court in November 1978 as an action in mandamus and for a declaratory judgment. The defendants are the State Employees Retirement Board, its Secretary and the Treasurer of the Commonwealth of Pennsylvania.

In July 1979, the plaintiff class was certified to consist of all state judges who were serving and had ten or more years of service as of June 22, 1972. The class was subdivided into two groups: (1) those who were sixty years of age as of June 22, 1972; and (2) those who had not attained that age as of that date.

The subjects of this class action are three retirement systems enacted or adopted by the state legislature between 1959 and 1974; (1) the State Employees Retirement Code of 1959 (1959 Code);[1] (2) the 1972 Commonwealth Compensation Commission Report imposing a "freeze" on the retirement base salary used

---

[1] Act of June 1, 1959, P.L. 392, §§101 *et seq.*, 71 P.S. §§1725-101 *et seq.*

to compute the Final Average Salary upon which benefits are computed (1972 FAS freeze);[2] and (3) the State Employees' Retirement Code of 1974 (1974 Code).[3] The gravamen of the plaintiffs' action is that the 1972 FAS freeze and the interpretation of the 1974 Code by the State Employees Retirement Board have unconstitutionally, or otherwise unlawfully, impaired retirement rights and benefits conferred by the 1959 Code upon the plaintiffs and the class they represent. An answer was filed on behalf of all defendants.

As a result of a stipulation entered into by the parties all genuine issues of material fact were removed from the case. The plaintiffs then filed two motions for summary judgment under Pa. R.C.P. No. 1035, asserting that they are entitled to judgment as a matter of law.

The first motion for summary judgment requests this Court to declare unconstitutional the 1972 FAS freeze and the provisions of the 1974 Code which purport to reduce the multiples by which benefits are calculated. The plaintiffs aver that those provisions impair their pension rights in violation of their property and contractual rights as protected by Article I, Section 17, and Article V, Section 16, of the Pennsylvania Constitution; and as further protected by Article I, Section 10, the fifth amendment and the fourteenth amendment of the United States Constitution.

The second motion requests us to declare that the defendants have misinterpreted the 1974 Code in their application of it to the named and class plaintiffs. In that motion the plaintiffs aver that the 1974 Code actually retains the "retirement allowance multipliers of the 1959 Code for all judicial service *prior* to Janu-

---

[2] The Report of June 22, 1972, froze the retirement base to the salaries existing prior to that date, and provided that those salaries shall be used to compute the "final average salary."

[3] State Employees' Retirement Code, 71 Pa. C. S. §§5101 *et seq.*

ary 1, 1973. It is further asserted, in that regard, that the defendants have and are improperly calculating the retirement allowances of the named and class plaintiffs by using "retirement allowance multipliers" which the 1974 Code makes applicable to judicial service *after* January 1, 1973.

In both motions for summary judgment the plaintiffs also pray for a writ of mandamus ordering the defendants to recalculate the retirement allowances of the named and class plaintiffs according to the plaintiffs' interpretation of the 1974 Code, and to pay to the named and class plaintiffs the difference between what they have received as allowances and what they should have received.

The state retirement scheme in effect prior to June 22, 1972, was the 1959 Code. The 1959 Code provided for the computation of retirement allowances by multiplying the judge's years on the bench times his Final Average Salary (FAS) times two different multipliers. For the judge's first ten years on the bench the multiplier .04 was used. For years after the first ten the multiplier .03 was used.

The 1972 report of the Commonwealth Compensation Commission, while recommending a salary increase to $40,000.00 for judges, also froze the FAS used in computing the retirement benefits at a judge's then existing salary level, which for most state judges was $30,000.00 annually.

In 1974 the legislature enacted a new scheme, the 1974 Code, which it made retroactive to January 1973. The 1974 Code lifted the 1972 FAS freeze but also reduced the multipliers which would be applied to the FAS in computing benefits: the multipliers were reduced from the .04 and .03 under the 1959 Code to .03 and .0225. The 1974 Code contained a "saving clause" which gave a judge the option of having his benefits calculated according to the system under the 1972 FAS

freeze, with the larger multipliers, instead of under the 1974 Code with the lower multipliers.

The effect of the 1972 retirement scheme and the 1974 scheme is illustrated by the following hypothetical example of a state judge who retired in 1977 after having served fifteen years on the bench.

### 1959 Code

| | | |
|---|---|---|
| First Ten Years | 10 x $40,000.00 x .04 | = $16,000.00 |
| Remaining Five Years | 5 x $40,000.00 x .03 | = $ 6,000.00 |
| | | |
| Total | | $22,000.00 |

### 1972 FAS Freeze

| | | |
|---|---|---|
| First Ten Years | 10 x $30,000.00 x .04 | = $12,000.00 |
| Remaining Five Years | 5 x $30,000.00 x .03 | = $ 4,500.00 |
| | | |
| Total | | $16,500.00 |

### 1974 Code (Reduced Percentages)

| | | |
|---|---|---|
| First Ten Years | 10 x $40,000.00 x .03 | = $12,000.00 |
| Remaining Five Years | 5 x $40,000.00 x .0225 | = $ 4,500.00 |
| | | |
| Total | | $16,500.00 |

### 1974 Code (Saving Clause)

| | | |
|---|---|---|
| First Ten Years | 10 x $30,000.00 x .04 | = $12,000.00 |
| Remaining Five Years | 5 x $30,000.00 x .03 | = $ 4,500.00 |
| | | |
| Total | | $16,500.00 |

It is clear from the above hypothetical that the application of the 1972 FAS freeze and both options under the 1974 Code reduced the retirement benefits or allowances which would have been provided under the 1959 Code. Therefore, we must reject the contention of the defendants that the pension allowance remained the same after the 1972 freeze and after the 1974 percentage reductions.

The issue that confronts us in this case is whether the Pennsylvania legislature had the legal power to so reduce the retirement benefits of the named plaintiffs and the class they represent. What we must decide is whether those judges who by June 22, 1972, had served ten or more years were entitled to have their retire-

ment allowances calculated according to the 1959 Code.[4] We start with the idea that retirement benefits, once deemed an extension of governmental grace, came to be viewed as a contractual consideration for employment and a means of securing and keeping public servants.[5]

In *Retirement Board v. McGovern,* 316 Pa. 161, 174 A. 400 (1934) the Supreme Court of Pennsylvania stated that benefits under the Retirement Acts, as to elective constitutional officers, are part of their salaries. In *McGovern* the Court further declared that until an employee has earned his retirement pay or until the time arrives that he may retire, his retirement pay is but an inchoate right; but when the conditions are satisfied, at that time retirement pay becomes a vested right of which the person entitled thereto cannot be deprived: it has ripened into a full contractual obligation.

However, after recognizing the nature of retirement pay, the opinion in the *McGovern* case further stated that:

> The legislature may from time to time, within the confines of that established relation [employer-employee], alter, change, amend, and render intact the actuarial soundness of the system so as to strengthen its fibers in any way it sees fit.

*Id.* at 176, 174 A. at 407.

Although this language would suggest a plenary governmental power over the terms of retirement benefits, it must be noted that the Court expressly restricted this power by the *confines of the established relationship* between the employer and the employee, which

---

[4] Under the 1959 Code, judges with over ten years service on the bench and who were sixty years of age or older were eligible to receive retirement allowances.

[5] *Commonwealth v. Walton,* 182 Pa. 373, 38 A. 790 (1897).

would include their established contractual relationship.

In *McBride v. Allegheny County Retirement Board*, 330 Pa. 402, 199 A. 130 (1938) the Court reiterated the principle that an employee's right to retirement pay vests once the conditions of the relevant retirement system have been met. In the *McBride* case, the Court emphasized that once the right to retirement pay vests, it cannot be changed by the legislature even to enhance the actuarial soundness of the retirement fund. The Court said of the government's power to make alteration for purposes of actuarial soundness:

> It may increase payments or require other actuarial changes to protect the established principal, *but as to employees who have through time built up or acquired their right to retirement pay, on the assurance from the government that it would be fully met, the government must understand that a definite fixed obligation has been assumed.* (Emphasis added.)

*Id.* at 408, 199 A. at 133.

Although in the *McGovern* case there is broad language concerning the government's power to make changes for purposes of actuarial soundness, the Court in the *McBride* case by the above language immunized vested contractual rights from the government's power of modification even for purposes of actuarial soundness.

Another decision indicative of the course judicial principle had taken was *Baker v. Retirement Board of Allegheny County*, 374 Pa. 165, 97 A.2d 231 (1953). In that case the employee had, in September 1928, completed twenty years of service as a policeman with the City of Pittsburgh. He applied for his pension from the *city police pension fund*. In October 1928, he became an employee of Allegheny County in the capacity of a court officer. In January 1929, he was awarded

his police pension benefits. In his new job as a county employee he made regular payments into the *county* retirement fund, from October 1928 until he retired from that job in June 1952. When he applied for his *county* pension benefits his application was denied. The basis of the denial was a state statute enacted in 1937 which provided that no person, who at the time of his employment by a county, was receiving or eligible to receive a retirement allowance from the state or any other political subdivision, would be eligible to receive a retirement allowance from the county retirement system.

In *Baker* the sole question was whether the 1937 statute, an amendment of the state Retirement Act, enacted almost nine years after the claimant had become a county employee and had begun his payments into the county fund, was retroactive to the date he began his employment with the county, October 1928, to bar his right to a *county* allowance. The Supreme Court of Pennsylvania held that the 1937 statute could not in harmony with the Constitution of the United States or Pennsylvania have such an effect; for, such an effect would impair the obligation of contracts.

In so holding, the Court in *Baker* stated that once an employee joins a pension fund he has a right to continued membership therein, *under the same rules and regulations which existed at the time of his employment,* and that the right is complete and vested. From that principle the Court further declared that the legislature could not thereafter constitutionally alter the provisions of an already existing contract of membership. Said the Court, "[h]is rights in the fund could only be changed by mutual consent." *Id.* at 169, 97 A.2d at 233.

Carried on the current of the earlier decisions came *Hickey v. Pittsburgh Pension Board,* 378 Pa. 300, 106 A.2d 233 (1954). In that case our state Supreme Court,

per Justice MUSMANNO, struck a blow aimed at ending the lingering "remnant of the ancient idea that a pension is a manifestation of sovereign generosity."

In that case, employee Hickey had begun employment with the City of Pittsburgh in 1910. In 1915 the state legislature enacted a statute providing that any person so employed who shall have attained the age of sixty and have been employed for twenty years shall be entitled to the pension fixed by the statute.

In 1930 Hickey completed his twentieth year of employment with the City and thus was qualified under the Act of 1915 to receive his pension at age sixty. In 1933, three years after Hickey had satisfied the minimum tenure requirement, the legislature amended the Act of 1915. The amendment empowered the pension board of a city of the second class to suspend the payments to any pensioner who took employment with the state or federal government or with the county in which the city was located.

In January 1947, Hickey, having passed his sixtieth birthday retired from his City employment and began receiving pension payments of $126.36 a month, in accordance with the Act of 1915. But when, in February 1952, Hickey obtained employment with Allegheny County, the City pension board discontinued his pension payments on the authority of the 1933 amendment.

Hickey commenced an action of mandamus to compel the pension board to resume his payments regardless of other employment. Upon appeal from the lower court's dismissal of Hickey's complaint, the Supreme Court of Pennsylvania reversed.

In reversing, the Court held that Hickey's right to a City pension became vested in 1930 when he completed twenty years of service and had made all contributions required under the Act of 1915. The Court further held that the vested right was personal property held by the pension fund until Hickey reached

sixty years of age, and that the legislature could in no way diminish rights duly paid for in services and money.

Regarding actuarial considerations, the Court in the *Hickey* case declared that:

The Legislature may strengthen the actuarial fibers but it cannot break the bonds of contractual obligations. *The permissible changes, amendments and alterations provided for by the Legislature can apply only to conditions in the future, and never to the past.* (Emphasis added.)

*Id.* at 309, 106 A.2d at 237.

The above emphasized language we interpret to mean that adjustments for actuarial purposes cannot be used to diminish the *rights* of those who became eligible in the past. In *Hickey* the Court stated with clarity and directness that the pensioner was entitled to be paid according to the contract created by the law in force when he became a member of the retirement system, the Act of 1915.

In the legal setting provided by the preceding decisional law came another significant pension case, *Harvey v. Allegheny County Retirement Board,* 392 Pa. 421, 141 A.2d 197 (1958).

The employee, Harvey, began working for Allegheny County in 1928. As of that time the Pension Act of May 8, 1919, was in effect. That act provided for contributions by county employees to the pension fund of 1% of their monthly salaries. In return, upon reaching fifty years of age after having been in the county employ for not less than twenty years, each employee became entitled to receive a pension equal to 50% of his average annual salary to a maximum amount of $100.00 a month. Five years after Harvey had begun his employment the legislature, in 1933, made substantial changes in the retirement system of Allegheny

County. The relevant changes were that the rate of employee monthly contributions to the fund was increased from 1% to 3%; and the age for voluntary retirement was increased to sixty years, except that an employee could retire with benefits after twenty years if he was separated from employment through no cause of his own.

Two years later, in 1935, the legislature again modified the retirement system by increasing the monthly contributions from 3% to 5%, and raised the maximum monthly amount of contributions payable to $10.00. Again, in 1947, the legislature further increased the maximum monthly amount of contributions from $10.00 to $15.00. Also, the monthly retirement allowance obtainable by an employee was raised from $100.00 to $150.00.

Harvey continued as an employee of the county until his dismissal in February 1951. At that time he was over fifty years of age and had been continuously employed by the county for almost twenty-three years. Thus, there was no dispute that he had fulfilled all requirements necessary to obtain the retirement allowance under the Act of 1919. It was also conceded that Harvey had complied with the requirements of later county retirement acts providing for increased rates and amounts of employee contributions.

Following his dismissal in 1951, Harvey applied for a retirement allowance. His application was denied on the ground that he had been dismissed for cause and that under the 1947 statute he was required to contribute to the pension fund until he attained sixty years of age, an age Harvey had not reached when dismissed.

Harvey commenced an action in mandamus to compel the county retirement board to pay him his retirement allowance from the date of his separation from county service. The plaintiff contended that his retire-

ment rights were controlled by the law in effect on the date of his original employment rather than the act in effect at the time of his dismissal.

The lower court determined that Harvey's *eligibility* was controlled by the Act of 1919, the law in effect when he entered county service. The lower court also determined that the *amount* of his retirement was governed by the Act of 1947, the law in effect at the time of his dismissal in 1951. It must be noted that when the Act of 1947 took effect Harvey had not completed twenty years of service with the county, but had at the time of dismissal. The lower court entered a judgment on the pleadings in Harvey's favor and issued a writ of mandamus directing the county retirement board to pay him all money due as a retired county employee as provided in the 1947 statute.

Upon appeal by the retirement board, the Supreme Court in the *Harvey* case reversed the lower court. The Supreme Court held that Harvey's retirement rights were governed by the change in the age of eligibility wrought by the Act of 1933; because as of the effective date of that act, Harvey had not attained eligibility to receive a pension.

In so holding, the Court in *Harvey* first reviewed the significant prior decisions on the issue. And then, based on those decisions, the Court summarized as follows the law relating to the rights of a public employee in a retirement system:

1. An employee *who has complied with all conditions necessary to receive a retirement allowance* cannot be affected adversely by subsequent legislation which changes the terms of the retirement contract.

2. An employee *who has not attained eligibility to receive a retirement allowance* may be subject to legislation which changes the terms of the retirement contract, if the change is a reasonable enhancement of the actuarial soundness of the retirement fund.

3. An employee who has *not* attained eligibility to receive a retirement allowance may not be subject to legislation which changes the terms of the retirement contract if the change does not reasonably enhance the actuarial soundness of the retirement fund.

In *Harvey v. Allegheny County Retirement Board* the Supreme Court of Pennsylvania articulated with clarity a principle less directly set forth in the *McBride* case: an employee who has complied with all the conditions of eligibility to receive a pension cannot have his contract of retirement adversely affected by subsequent legislation, *not even for purposes of actuarial soundness.* The legislature's legal power to make adjustments for purposes of actuarial soundness must be confined to those employees who have not, as of the time of the adjustment, satisfied all the conditions of eligibility. Even as to that class of employees the government must show that the change reasonably enhances actuarial soundness.

The decisional law that has been reviewed in this opinion, especially the *Harvey* and *McBride* cases, points commandingly to the conclusion that the plaintiffs are entitled to the declaratory and mandatory relief they seek. The named plaintiffs and the class plaintiffs as certified all commenced their public service as judges under the 1959 Code. Before the 1959 Code was altered or supplanted in any way here relevant, all of the plaintiffs had satisfied all of the conditions necessary to entitle them to a pension under the 1959 Code.

Once the plaintiffs had satisfied the conditions of eligibility which governed the right to a pension under the 1959 Code, that Code became the plaintiffs' contract of retirement. Once the plaintiffs attained eligibility for a pension under the 1959 Code, they gained a vested right to have their retirement allowances computed according to the formula mandated by that Code.

For the legislature to freeze the FAS upon which benefits would be computed or to reduce the multipliers applicable to the FAS, as the legislature did by force of the 1972 Report of the Compensation Commission and the 1974 Code, was an obvious diminishment of the benefits the plaintiffs would have received under their contract of retirement, the 1959 Code. Such legislative provision violated Article I, Section 17, of the Pennsylvania Constitution by impairing the obligation of contracts.

Because of the conclusion we have reached there is no need to consider the plaintiffs' argument based on Article V, Section 16, of the Pennsylvania Constitution, which proscribes the diminishment of judicial compensation. Nor need we consider the plaintiffs argument based on the Contract Clause of the United States Constitution. In that latter regard, however, it is useful to compare the recent case in the Federal District Court of Delaware, *Marvel v. Dannemann,* 490 F. Supp. 170 (D.C. Del. 1980), in which the federal court invalidated a state legislative increase in the rate of pension contribution as it related to certain judges.

### Order

And Now, the 23rd day of October, 1980, the plaintiffs' first motion for summary judgment is granted. We hereby determine and declare that the named plaintiffs and the certified class plaintiffs are constitutionally entitled to have their retirement allowances computed and paid according to the appropriate formula under the State Employees' Retirement Code of 1959, Act of June 1, 1959, P.L. 392, §§101 *et seq.,* 71 P.S. §§1725-101 *et seq.*

It is further ordered that the State Employees' Retirement Board shall recalculate the allowances of the named plaintiffs and any member of the certified

plaintiff class according to the said Retirement Code of 1959, and pay to such plaintiffs the difference between what they have received as allowances under other provisions and what they should have received as allowances under the Retirement Code of 1959.

It is also ordered that the plaintiffs' prayer for the award of counsel fees be made the subject of an application filed with this Court and addressing the standards set forth in Pa. R.C.P. No. 1716.

The plaintiffs' second motion for summary judgment is denied as being moot.

Judge WILKINSON, JR. dissents.