433 A.2d 871

J. Frank McKENNA, Jr., an individual, on behalf of himself and all others similarly situated, and Frederic G. Weir, an individual, on behalf of himself and all others similarly situated

v.

The STATE EMPLOYEES' RETIREMENT BOARD and Richard L. Witmer, in his capacity as Executive Secretary of the State Employees' Retirement Board and Robert E. Casey, in his capacity as Treasurer of the Commonwealth of Pennsylvania, Appellants.

Supreme Court of Pennsylvania.

Argued Jan. 19, 1981.

Decided July 16, 1981.

Reargument Denied Sept. 10, 1981.

Harvey Bartle, III, Atty. Gen., Thomas J. Mangan, Jr., Asst. Atty. Gen., Harrisburg, for appellants.

John J. Bingler, Jr., Pittsburgh, for McKenna and Weir.

Judd N. Poffinberger, Pittsburgh, for Pa. Bar Assoc.

Before O'BRIEN, C. J., ROBERTS, NIX, LARSEN, FLAHERTY and KAUFMAN, JJ.

## OPINION

ROBERTS, Justice.

This is a class action brought by appellees, Judge J. Frank McKenna and Judge Frederic G. Weir, on behalf of all state court judges who were active and had ten or more years of service as of June 22, 1972. The class members contend that their benefits under the State Employees' Retirement Code of 1959 have been unconstitutionally impaired by actions of the Commonwealth Compensation Commission taken on June 22, 1972, and by provisions of the revised State Employees' Retirement Code, enacted in 1974. The Commonwealth

Court agreed with class members' contention and directed appellant, the State Employees' Retirement Board, to recalculate class members' benefits. 54 Pa.Cmwlth. 338, 352, 421 A.2d 1236, 1243 (1980). This record compels the conclusion that the Commonwealth Court correctly granted class members relief. Hence, we affirm.

I.

The Retirement Code of 1959 establishes a comprehensive retirement system for state employees, including class members.[1] Class members' participation in the system is mandatory, taking effect upon commencement of judicial service. § 201(1). Under this mandatory system, class members and the Commonwealth are required to contribute to a Retirement Fund. §§ 301 & 304. Assets of the Fund are reserved for the payment of contributors' benefits. § 801. These benefits include the "superannuation retirement allowances" and "withdrawal allowances" which class members contend have been impermissibly impaired.[2]

Before 1972, when the Compensation Commission took its now-challenged action, a class member's benefits under the Code of 1959 were determined by two factors: years of service on the bench and "final average salary." Final average salary is defined as the highest annual compensation received by a contributor during any five nonoverlapping periods of twelve consecutive months. § 102(19). Benefits were calculated by multiplying the member's first ten years on the bench by the member's final average salary and then by a multiplier of 0.04. Added to this figure was the

1. Class members are specifically included within the Code's definition of "state employe." See Act of June 1, 1959, P.L. 392, § 102(6)(a)(ii), formerly 71 P.S. § 1725–102(6)(a)(ii) (1962).

   A complete version of the Code of 1959, containing relevant amendments, does not appear in Purdon's Pennsylvania Statutes Annotated. Appellees have prepared a helpful Appendix to their Brief which contains the entire Code, as amended, as of June 22, 1972.

2. §§ 401(1)(e) & (e.1) (retirement allowance); §§ 402(2)(c) & (d) (withdrawal allowance).

product of the member's additional years on the bench, final average salary, and a multiplier of 0.03.[3]

Salaries of most class members had been increased in 1966 to $30,000.[4] Final average salaries as of June 22, 1972, thus were $30,000.

The retirement benefits of a hypothetical class member with fifteen years of service and a final average salary of $30,000 would be calculated under the Code of 1959 as follows:

| Illustration No. 1 | Multiplier | | Final Average Salary | | Years | | Benefits |
|---|---|---|---|---|---|---|---|
| First 10 years | (0.04) | × | ($30,000) | × | (10) | = | $12,000 |
| Years beyond 10 | (0.03) | × | ($30,000) | × | (5) | = | $ 4,500 |
| | | | | | | TOTAL | $16,500.[5] |

Because class members had served ten or more years as of June 22, 1972, under the Code of 1959 they had the right to separate from service and still leave contributions credited to their account. Upon reaching the "superannuation retirement age" of sixty, § 102(14), class members who chose to exercise this right would have been eligible to receive their retirement allowances. This right is termed "vesting."[6] Additionally, because of their ten or more years of service, class members were eligible as of June 22, 1972, for withdrawal benefits if service terminated involuntarily. See §§ 402(2)(c) & (d).

The Commonwealth Compensation Commission was a group of five private citizens who were directed by the

3. See id.

4. Before June of 1972, salaries were set by the Act of June 1, 1956, P.L. (1955) 1959, § 4, as amended, Act of January 26, 1966, P.L. (1965) 1602, § 2.

5. We borrow this illustration, as well as subsequent illustrations, from the Opinion of the Commonwealth Court.

6. See Act of July 31, 1968, P.L. 695, adding § 102(23.1).

Legislature to make an "exhaustive study" of the salaries and retirement benefits of public officers, including

> "the Governor, the Lieutenant Governor, the cabinet officers (including the Auditor General and the State Treasurer), the justices and judges of the Supreme Court, the Superior Court, the Commonwealth Court, the courts of common pleas, the Municipal Court of Philadelphia and the Traffic Court of Philadelphia, and the offices and members of the General Assembly."

Act of June 16, 1971, P.L. 157, § 2(b), 65 P.S. Appendix at p. 59 (Supp.1980). The first Report of the Commission was to take effect immediately, and was to have the effect of law,

> "unless, within sixty days following the date of submission thereof the General Assembly shall, by concurrent resolution reject the report, in whole or in part, or enacts legislation...."

Id.[7]

On June 22, 1972, the Compensation Commission presented its first Report. The report set forth salary increases for members of the Executive, Judicial, and Legislative Branches. For class members, the report increased salaries to $40,000 from the level of $30,000 established in 1966. See supra note 4. However, the report provided that "[e]xisting salaries as established by law prior to the date of this Report ... shall be used in computing ... 'final average salary.' ..." 1972 P.L. 1988, 65 P.S. Appendix at p. 62.

By Concurrent Resolution No. 1 of 1972, dated August 15, 1972, the Legislature limited salary increases set forth in the report to $2,500. 65 P.S. Appendix at p. 71. The Legislature left undisturbed the final average salary freeze contained in the report.

A subsequent report of the Compensation Commission, presented November 30, 1972, reinstated the salary increases set forth in the first report. This subsequent report also

7. No challenge is made to the permissibility of the Legislature's delegation of lawmaking authority to this legislatively created commission or to the concurrent resolution requirement.

sought to justify the position of the Compensation Commission regarding the final average salary freeze:

"The Commission, when it established the freeze, was in receipt of an informal but well qualified legal interpretation that this action was permissible under existing legal and judicial guidelines. The reasoning was that the freeze did not constitute a reduction in the amount of pension accrual being earned by the respective members."

65 P.S. Appendix at p. 88.

Unlike the first report, this subsequent report was not acted upon by the Legislature. Thus, as of November, 1972, salaries of class members were set at $40,000. However, final average salaries were frozen at $30,000. Benefits were kept at a pre-1972 figure even though actual salaries had been increased.[8]

Without the freeze, a class member's final average salary would have been free to increase. For the hypothetical class member with fifteen years of service and a final average salary of $40,000, the benefits would have been calculated as follows:

| Illustration No. 2 | Multiplier | | Final Average Salary | | Years | | Benefits |
|---|---|---|---|---|---|---|---|
| First 10 years | (0.04) | × | ($40,000) | × | (10) | = | $16,000 |
| Years beyond 10 | (0.03) | × | ($40,000) | × | (5) | = | $ 6,000 |
| | | | | | TOTAL | | $22,000. |

Thus, had final average salaries not been frozen, actual salary increases would have been given effect, and retirement allowances would have been $22,000 instead of $16,500.[9]

8. In 1976, the Legislature repealed the November 1972 Compensation Commission report insofar as it related to judges' salaries and established a new salary schedule. Under the new schedule, those judges who had been assigned a salary of $40,000 were assigned a new salary of $45,000.

9. Our use of $40,000 as the final average salary of the hypothetical class member is for convenience. From June of 1972 to July of 1976,

In 1974, the Legislature established a new retirement system, the State Employees' Retirement Code (Code of 1974), 71 Pa.C.S. § 5101 et seq. This Code of 1974 abandoned the Compensation Commission's final average salary freeze. However, in its stead, the Code of 1974 established a system of reduced multipliers for use in the benefits formula. The multiplier of 0.04 for the first ten years of service contained in the Code of 1959 was reduced to 0.03. The multiplier of 0.03 for years beyond the tenth was reduced to .0025.[10] The Code also provided an "alternate method," under which class members were given the "option" of having benefits calculated on the basis of frozen final average salaries and multipliers in effect before the Code of 1974.[11]

The reduced multipliers contained in the Code of 1974 had the following effect on the benefits of the class member with fifteen years of service and a final average salary of $40,000:

| Illustration No. 3 | Multiplier | | Final Average Salary | | Years | Benefits |
|---|---|---|---|---|---|---|
| First 10 years | (0.03) | × | ($40,000) | × | (10) | = $12,000 |
| Years beyond 10 | (.0025) | × | ($40,000) | × | (5) | = $ 4,500 |
| | | | | | TOTAL | $16,500. |

Thus under the Code of 1974, like the final average salary freeze of the Compensation Commission, actual salary increases were not given effect. Benefits were the same before and after June 22, 1972, when actual salaries had first been increased.

## II.

Appellees, Judges McKenna and Weir, were more than sixty years of age as of June 22, 1972, the effective date of

actual salaries were set at various amounts, including $32,500, $40,-000, and $45,000.

10. Stipulation, Record at 22a–23a.

11. Id.

the final average salary freeze. Both reached the compulsory retirement age of seventy in the Spring of 1978. See Pa.Const. art. V, § 16(b). In November of 1978, the named judges commenced the present action by filing a two-count complaint, one for mandatory and the other for declaratory relief. Following class certification, the parties entered into a stipulation of facts. Appellees then moved for summary judgment.

In an opinion discussing several of the retirement benefits decisions of this Court, the Commonwealth Court en banc (Williams, J.) concluded that the actions of both the Compensation Commission and the Legislature violated art. I, § 17 of the Pennsylvania Constitution by "impairing the obligation of contracts." The Commonwealth Court proceeded on the premise that "[a]n employee who has complied with all conditions necessary to receive a retirement allowance cannot be affected adversely by subsequent legislation which changes the terms of the retirement contract." ·54 Pa.Cmwlth. at 350, 421 A.2d at 1242. According to the Commonwealth Court, class members, who had ten or more years of service as of June 22, 1972, "had satisfied all of the conditions necessary to entitle them to a pension under the 1959 Code." 54 Pa.Cmwlth. at 351, 421 A.2d at 1243. Thus, the Commonwealth Court held:

"Once the plaintiffs had satisfied the conditions of eligibility which governed the right to a pension under the 1959 Code, that Code became the plaintiffs' contract of retirement. Once the plaintiffs attained eligibility for a pension under the 1959 Code, they gained a vested right to have their retirement allowances computed according to the formula mandated by that Code."

54 Pa.Cmwlth. at 351, 421 A.2d at 1243. Judge Wilkinson dissented.

### III.

Appellant Retirement Board makes two arguments in support of the final average salary freeze of the Compensation Commission and the reduction of multipliers contained

in the Code of 1974. First, assuming that there was a reduction of benefits, the Board asserts that such a reduction was an enhancement of the actuarial soundness of the Retirement Fund. According to the Board, the reduction was permissible because "none of [the class members]," apparently including those class members who have reached "superannuation retirement age" of sixty, "have complied with all conditions necessary to receive retirement." Second, in the alternative, the Board accepts the Commonwealth Court's view that class members have fulfilled all conditions of eligibility. Mirroring the position taken by the Commonwealth Compensation Commission, the Board asserts that even though salary increases were not given effect in calculating benefits, there is no impairment of the obligation of contracts where, as here, retirement benefits remain constant before and after the challenged actions. (See supra Illustrations No. 1 and No. 3).

We are not persuaded by the Board's contention that no class member has complied with conditions and that reductions thus are permissible. The record is clear, as the Commonwealth Court concluded, that all class members have established their eligibility for retirement benefits. All members have in common ten or more years of judicial service as of June 22, 1972. For those class members such as appellees Judge McKenna and Judge Weir, who were then sixty years of age or older and had served ten or more years, Section 401 of the Code of 1959 assures a retirement allowance upon retirement at or after the "superannuation age" of sixty. See §§ 401(1)(e) & (e.1). Those remaining class members with ten or more years of service who had not yet reached the age of sixty also are assured a retirement allowance upon reaching the age of sixty. Section 102(23.1), added by the Act of July 31, 1968, P.L. 695, provides:

"'Vesting' ... shall mean the right of a member who separates from service after having completed ten (10) or more years of credited service to leave accumulated deductions ... credited to his account in the fund and upon reaching superannuation retirement age receive a superannuation retirement allowance."

See also § 401(5). Similarly assured is a withdrawal allowance for those class members who separate from service involuntarily. See §§ 402(2)(c) & (d). Thus, whether or not a class member is over sixty years of age, all have served ten or more years and are assured their benefits.[12]

We must also reject the Board's argument that, consistent with the obligation of contracts clause of the Pennsylvania Constitution, benefits here were permissibly kept at levels in effect before the final average salary freeze and reduction of multipliers. The Commonwealth Court correctly concluded that before the 1972 final average salary freeze and 1974 multiplier reduction, class members were entitled to a calculation of benefits based on the highest salaries they received during their years of service and the multipliers specified in the Code of 1959. When salary payments were periodically increased in accordance with the legislative judgment, benefits of class members under the retirement system established by the Code of 1959 also were to increase accordingly. The freeze of final average salaries effected in June of 1972 and the reduction of multipliers effected in 1974 disturbed class members' package of benefits by failing to give recognition to actual salary increases. The previously established eligibility of class members precludes this alteration of the benefits package.

Here the Commonwealth Court correctly concluded that the challenged actions impaired class members' previously

12. On this record there is no need to express any view on the Board's assertion that the reductions here are actuarially sound.

There is language in *Pennsylvania Association of Hospital Physicians, Inc. v. State Employees Retirement Board*, 25 Pa.Cmwlth. 632, 361 A.2d 449 (1976), suggesting that contributors under the Code of 1959 with ten or more years of service are nonetheless subject to changes in the system which are actuarially sound. That case did not involve class members. The Commonwealth Court deemed it inappropriate to make its earlier language in that case applicable here. We see no reason to disturb the Commonwealth Court's view of its own earlier case.

Amicus, Pennsylvania Conference of State Trial Judges, urges that a contract theory should be applied in this case so that those judges with less then ten years of service, not now before this Court, could also prevail. However, the record now before us makes it unnecessary to address the argument presented by the amicus.

established right to have their retirement benefits computed in accordance with the formula mandated by the Code of 1959. Its order must be affirmed.

Order affirmed.

NIX and FLAHERTY, JJ., filed concurring opinions.

LARSEN, J., filed a concurring opinion in which FLAHERTY and KAUFFMAN, JJ., join.

NIX, Justice, concurring.

Although I concur in the result reached by the majority opinion, that opinion fails to address the real issue created by our case law.

It is well established that retirement benefits are founded upon a contract theory of deferred compensation. *Harvey v. Allegheny County Retirement Board*, 392 Pa. 421, 141 A.2d 197 (1958); *Baker v. Retirement Board of Allegheny County*, 374 Pa. 165, 97 A.2d 231 (1953); *McBride v. Allegheny County Retirement Board*, 330 Pa. 402, 199 A. 130 (1938); *Retirement Board of Allegheny County v. McGovern*, 316 Pa. 161, 174 A. 400 (1934).

However, some cases suggest that notwithstanding recognition of contractual rights from the time of entering employment and contributing to the retirement fund, the legislature may, prior to attaining eligibility to receive such benefits, enact legislation which changes the terms of the retirement contract if the change enhances the actuarial soundness of the retirement fund. *Geary v. Allegheny County Retirement Board*, 426 Pa. 254, 257–58, 231 A.2d 743, 745 (1967); *Harvey v. Allegheny County Retirement Board*, 392 Pa. at 431–32, 141 A.2d at 203.

The basic unfairness of acknowledging the contractual nature of retirement benefits as of the time of entering employment on the one hand, but allowing subsequent adjustments of these contract rights under the guise of protecting "actuarial soundness" on the other is obvious.

The terms and conditions of a retirement contract must necessarily exist at the time the contract is entered into. To

allow the state to unilaterally change, to the employee's detriment, the terms and conditions of the retirement contract based on the state's misjudgment of funding needs, is contrary to the bargained for terms existing at the time of the employee assumed his or her position.

The state has full control of the retirement program at the time it is entered into with the employee. To allow a unilateral change in the terms or conditions of the retirement contract subsequent to its creation, under any circumstances, is contrary to the prohibition against the state's impairment of the obligation of contracts.[1] "The Commonwealth can no more impair its contractual obligation by legislation unilaterally altering the terms of the pension it agreed to give to those in its service than it can by legislation abrogating its duty to pay in full the accrued salary of its employees." *Wright v. Allegheny County Retirement Board*, 390 Pa. 75, 79, 134 A.2d 231, 233 (1957).

The majority, in predicating its decision today upon the fact that class members' rights were vested, implicitly acknowledges the legitimacy of the "actuarial soundness" exception. With that position I cannot agree. I would therefore hold that a state employee has a fixed contract right to continued membership in a retirement fund, under the same rules and regulations prevailing at the time of employment, which may not be unilaterally qualified or altered by subsequent legislative enactment. *Wright, supra; Baker, supra.*

LARSEN, Justice, concurring.

I concur with Mr. Justice Roberts' result; I cannot however, accept his reasoning.

Article 5, § 16(a) of the Pennsylvania Constitution provides:

Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth.

---

1. U.S.Const., Art. I, § 10; Pa.Const., Art. I, § 17.

Compensation includes pension benefits as provided by the pension formula in effect on the date a judge first assumes his office. No decrease of *any* judicial compensation can occur "unless by law applying generally to all salaried officers of the Commonwealth." As there was no corresponding decrease to all salaried officers of the Commonwealth involved in the June 22, 1972 actions of the Commonwealth Compensation Commission and the 1974 revisions to the State Employees' Retirement Code, any judge who assumed office before March 1, 1974 (effective date of 1974 Retirement Code) will be unaffected by these two actions and their retirement benefits will be computed in accordance with the formula mandated by the State Employees' Retirement Code of 1959 and any subsequent increased enhancements.

FLAHERTY and KAUFFMAN, JJ., join in this concurring opinion.

FLAHERTY, Justice, concurring.

I join the Concurring Opinion authored by Mr. Justice Larsen and concur in the result reached by Mr. Justice Roberts but feel it necessary to write separately inasmuch as the reasons advanced for the conclusion reached fail to recognize that upon entry into the fund, the terms by which the retirement benefits accrue are contractually fixed. When the Commonwealth seeks unilaterally to modify that contract, it does so in violation of Article I, Section 17 of the Constitution of the Commonwealth of Pennsylvania which prohibits the passing of any law impairing the obligation of contracts.

That retirement benefits are contractually grounded was soundly recognized by this Court in *Baker v. Retirement Board of Allegheny County*, 374 Pa. 165, 97 A.2d 231 (1953) where it was stated that "[a]s of the time [the employe] joined the fund, his right to continued membership therein, *under the same rules and regulations existing at the time of his employment,* was complete and vested. The legislature could not thereafter constitutionally alter the provisions of

his already existing contract of membership. His rights in the fund could only be changed by mutual consent." *Id.*, 374 Pa. at 169, 97 A.2d at 233.

Retirement benefits are not a gratuity; they are deferred compensation and should be viewed as such. To change the terms by which retirement benefits are a calculated strike at the heart of the compensation package.

The terms in effect on the date of hire are for all times the terms to which both parties are bound absent a modification by both parties. Regardless of length of service, the Commonwealth cannot unilaterally diminish the benefits or terms of the contract which the parties executed. Undue emphasis is placed by the majority opinion upon the fact that as of the change in 1972, the appellees had both attained ten years of service and that benefit had "vested" and were both over age sixty. Having served the Commonwealth for ten years, however, is not a *condition* to contractual obligation; that is already accomplished by making contributions. A threshold requirement of ten years service is a *condition* to be fulfilled before the employe has the option of separating from service while leaving the contribution intact and active. It is not determinative of whether he has a valid contract with the state or of what the terms of that contract are. This is determined by the retirement code in effect on the date service begins.