501 Pa. 293 (1983)
461 A.2d 593
COMMONWEALTH of Pennsylvania, ex rel. Leroy S. ZIMMERMAN, Attorney General of the Commonwealth of Pennsylvania and John A. Reilly, District Attorney of Delaware County, Pennsylvania, Appellants,
v.
OFFICERS AND EMPLOYEES RETIREMENT BOARD, Appellee.
Supreme Court of Pennsylvania.
Argued December 8, 1982.
Decided March 31, 1983.
Reargument Granted June 2, 1983.
*294 Robert A. Graci, Rex R. Gary, Asst. Dist. Attys., Susan J. Forney, Deputy Atty. Gen., for appellants.
Christopher F. Gorbey, Media, for appellee.
*295 Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY and McDERMOTT, JJ.

OPINION
NIX, Justice.
The Commonwealth, through its Attorney General and the District Attorney of Delaware County, filed suit in mandamus against appellee, Officers and Employees Retirement Board, to compel it to discontinue payment of retirement benefits to John H. Nacrelli, former Mayor of the City of Chester. Appellants contend that the mandate of the Public Employees Forfeiture Act, Act of July 8, 1978, P.L. 752, No. 140, 43 P.S. §§ 1311-1315 (Act 140), prevents the former Mayor from receiving retirement pay. Appellee defended in the lower court by challenging the constitutionality of Act 140. On May 29, 1980 the Court of Common Pleas dismissed appellants' complaint and entered judgment in favor of appellee. Jurisdiction to hear this direct appeal is vested in this Court under 42 Pa.C.S.A. § 722(7).
John Nacrelli was an employee of the City of Chester, Pennsylvania, continuously from April 6, 1959 through April 27, 1979, a period of over twenty (20) years. He was elected Mayor in November, 1969 and held that office until his resignation effective April 28, 1979. Less than three (3) months prior to his resignation he was convicted in the United States District Court for the Eastern District of Pennsylvania of charges of obstructing state or local law enforcement, 18 U.S.C. § 1511, participating in an enterprise which affected interstate commerce and conspiracy, 18 U.S.C. § 1962(c) and (d), and filing false income tax returns, 26 U.S.C. § 7206(1).
Mr. Nacrelli was a member of the pension plan for officers and employees of the City of Chester.[1] Under his membership *296 contract, Mr. Nacrelli contributed the sum of $13,222.47 through deductions from his paycheck over the twenty years of employment. On July 8, 1978, Act 140 was enacted by the legislature. It provides for forfeiture of benefits upon conviction of or plea of guilt or no defense to "any crime related to public office or public employment." The conviction or plea is deemed a breach of the public officer's or public employee's contract with his employer. The provisions of Act 140 were required to be retroactive to December 1, 1972.[2] The actions which formed the basis of the criminal proceeding in federal court occurred prior to the enactment of Act 140.[3]
Appellee began to pay pension benefits to Mr. Nacrelli from April 28, 1979 and has continued to make retirement payments to him although appellant, the District Attorney *297 of Delaware County, demanded that appellee discontinue payment of the pension benefits. Appellants seek reversal of the court of common pleas, an order upon appellee to cease payment of all Commonwealth contributions to Mr. Nacrelli and that he be ordered to reimburse the City of Chester any amount received by him which exceeds his own contribution to the fund.[4]
The question of the permissibility of unilateral legislative changes in the established contractual rights of public employees who are members of a retirement system is not new to this Court. It has long been recognized in Pennsylvania that the nature of retirement provisions for public employees is that of deferred compensation for service actually rendered in the past, Bellomini v. State Emp. Retirement Bd., 498 Pa. 204, 209, 445 A.2d 737, 739 (1982) (plurality opinion). Accord, McKenna v. State Emp. Retirement Bd., 495 Pa. 324, 433 A.2d 871 (1981); Harvey v. Allegheny County Retirement Board, 392 Pa. 421, 141 A.2d 197 (1958); Wright v. Retirement Board of Allegheny Co., 390 Pa. 75, 134 A.2d 231 (1957); Baker v. Retirement Board of Allegheny County, 374 Pa. 165, 97 A.2d 231 (1953); McBride v. Allegheny County Retirement Board, 330 Pa. 402, 199 A. 130 (1938); Retirement Board of Allegheny County v. McGovern, 316 Pa. 161, 174 A. 400 (1934).
And it is the law of this Commonwealth that unilateral modifications in the retirement system, after retirement eligibility requirements have been met, may not be adverse to the member. See, generally, Catania v. Com. State Employee's Retirement, 498 Pa. 684, 450 A.2d 1342 (1982) (plurality opinion); McKenna v. State Emp. Retirement Board, supra, Harvey v. Allegheny Co. Retirement Board, supra; McBride v. Allegheny Co. Retirement Board, supra; Retirement Board of Allegheny Co. v. McGovern, supra.
*298 The precise issue raised by this appeal is whether the legislature may retroactively require the forfeiture of pension benefits before retirement eligibility requirements have been met, but after membership in the retirement system is complete. In Baker v. Retirement Board of Allegheny County, supra, we held that the "legislature could not . . . constitutionally alter the provision of [an] already existing contract of membership. [The employee's] rights in the fund could only be changed by mutual consent. . . ." 374 Pa. at 169, 97 A.2d at 233. In Hickey v. Pittsburgh Pension Board, 378 Pa. 300, 106 A.2d 233 (1954) this Court reaffirmed the Baker holding.
In Harvey v. Allegheny Co. Retirement Board, supra, an exhaustive review of the cases produced the following summary:
1. An employe who has complied with all conditions necessary to receive a retirement allowance cannot be affected adversely by subsequent legislation which changes the terms of the retirement contract.
2. An employe who has not attained eligibility to receive a retirement allowance may be subject to legislation which changes the terms of the retirement contract if the change is a reasonable enhancement of the actuarial soundness of the retirement fund.
3. An employe who has not attained eligibility to receive a retirement allowance may not be subject to legislation which changes the terms of the retirement contract if the change does not reasonably enhance the actuarial soundness of the retirement fund.
392 Pa. at 431, 432, 141 A.2d at 203 (footnote omitted).
In relation to Act 140, four Justices of this Court have held that the retroactive application of Act 140 upon those whose retirement benefits had vested prior to July 8, 1978 (the effective date of the Act) is an unconstitutional impairment of the obligation of contract. Bellomini v. State Emp. Retirement Bd., supra, (Opinion of Chief Justice O'Brien, joined by Flaherty, J.) (Nix, J. concurring, joined by McDermott, J.). The concept of an implied contractual duty of *299 faithfulness was expressly rejected. 498 Pa. at 211, 445 A.2d at 740. However, a majority in Bellomini did not rule upon the application of Act 140 to those whose retirement eligibility requirements had not been met prior to its enactment. Today we face that question.
A reexamination of the cases of Baker v. Retirement Board of Allegheny County, supra and Hickey v. Pittsburgh Pension Board, supra, is appropriate. In Baker, the employee retired in 1928 after twenty (20) years service with the City of Pittsburgh and received retirement pay from the Police Pension Fund Association. That same year Baker became an employee of the County of Allegheny. He was a member of the County Retirement Fund, and made regular payments into the fund until his retirement in 1952. While he was still employed by the County, the County pension law was amended by the Act of March 31, 1937, P.L. 191, § 12, which declared anyone who at the time of employment with the County was receiving a retirement allowance from another political sub-division of the Commonwealth was ineligible for retirement pay from the County. After his retirement, his request for the retirement allowance was denied by the County Retirement Board, relying upon the Act of March 31, 1937. We held the change did not apply to Baker. The Baker holding was based upon the facts that "[w]hen the legislation in question was passed, appellee already had been a member of, and had contributed to, the County retirement fund for approximately nine years. He made these contributions on the basis of the existing rules, regulations and provisions for eligibility for retirement allowance. As of the time he joined the fund, his right to continued membership therein, under the same rules and regulations existing at the time of his employment, was complete and vested." Baker v. Retirement Board of Allegheny County, 374 Pa. at 168, 169, 97 A.2d at 233.
In Hickey, a disqualification because of subsequent governmental employment, statutorily enacted after the employee had met his period of service requirement but before *300 he had reached the age requirement, was held to be inapplicable to the employee. Mr. Justice Musmanno stated:
The appellees in this case entertain the fallacious idea (shared by many others) that a contract of employment between government and employee is paternalistic; that there is something almost philanthropic about the government paying salaries to its employees.
378 Pa. at 307, 106 A.2d at 236.
Affirming Baker, the Hickey court accommodated the holding of Retirement Board of Allegheny County v. McGovern, supra,[5] with the following explicit language:
The Legislature may strengthen the actuarial fibers but it cannot break the bonds of contractual obligations. The permissible changes, amendments and alterations provided for by the Legislature can apply only to conditions in the future, and never to the past. According to the cardinal principle of justice and fair dealings between government and man, as well as between man and man, the parties shall know prior to entering into a business relationship the conditions which shall govern that relationship. Ex post facto legislation is abhorred in criminal law because it stigmatizes with criminality an act entirely innocent when committed. The impairment of contractual obligations by the Legislature is equally abhorrent because such impairment changes the blueprint of a bridge construction when the spans are half way across the stream.
378 Pa. at 309, 310, 106 A.2d at 237, 238.
Appellants had strongly urged that Act 140 was not an impairment of contract since it "merely [made] explicit the longstanding implied contractual duty of Commonwealth officials and employees to provide faithful service to the Commonwealth as a condition precedent to receipt of a pension." Brief for Appellants at 12. As stated previously, that position was rejected by this Court in Bellomini v. State *301 Emp. Retirement Bd., supra. After finding no precedent in Pennsylvania for the position, Chief Justice O'Brien noted in Bellomini:
[T]he arbitrariness of December 1, 1972, the date to which the provisions of Act 140 were made retroactive, is further evidence that faithfulness has not been a long-time implied contractual duty in Pennsylvania, violation of which disqualifies a public employee from receipt of retirement pay. If Act 140 were truly a codification of a long-standing and recognized contractual duty, Appellee Bellomini posits, "wouldn't the legislature have made the Act retroactive to 1930 or 1940 or 1950?"
498 Pa. at 211-12, 445 A.2d at 740.
Appellants now urge that since Mr. Nacrelli's pension benefits had not "vested" at the time of the passage of Act 140 and the enactment of Act 140 furthers an important public interest, the application of Act 140 to Mr. Nacrelli does not impair the contract between Mr. Nacrelli and government. First, under Baker and Hickey Mr. Nacrelli's contractual rights vested at the time of his membership in the retirement system. Those rights may not be adversely affected by unilateral changes in the system. Even, changes for actuarial soundness purposes are supported by the reasoning that the maintenance of actuarial soundness is not adverse to a member.
Second, appellants attempt to revert to the confusion that existed in this area of the law prior to the explication of Harvey v. Allegheny Co. Retirement Board, supra, by referring to the rights of Mr. Nacrelli as "inchoate" is not persuasive. We do not agree that constitutional rights can be determined by labels or terminology. Further, the discussion in McBride v. Retirement Board of Allegheny County, supra,[6] and Retirement Board of Allegheny County v. *302 McGovern, supra, relied upon by appellants is pertinent only in discussions regarding changes for actuarial soundness. And third, the asserted public purpose of Act 140 will not be met by its retroactive application. Retroactivity to December 1, 1972 cannot prevent wrongdoing that has already occurred. Hence, any argument predicated upon a compelling state interest must necessarily fail when applied to this attempted retroactive forfeiture. The real and practical need involved is to prevent future wrongdoing.
Although the lower court based its decision upon Burello v. Commonwealth of Pennsylvania, State Employees Retirement System, 49 Pa. Commonwealth Ct. 364, 411 A.2d 852 (1980)[7] which held the retroactivity section of Act 140 to be constitutionally infirm as an ex post facto law in itself, we need not address that ground. No valid reason has been advanced, nor do we find a basis for abandoning the holdings of Baker v. Retirement Board of Allegheny County, supra and Hickey v. Pittsburgh Pension Board, supra. Thus, having concluded that the contractual rights of the public official were determined as of the date of his membership in the retirement system and cannot be reached by a retroactive forfeiture provision, the court below was correct in denying the writ of mandamus against appellee, Officers and Employees Retirement Board.
Accordingly, the Order of the Court of Common Pleas is affirmed.
O'BRIEN, Former C.J., did not participate in the decision of this case.
HUTCHINSON, J., did not participate in the consideration or decision of this case.
*303 FLAHERTY, J., concurred in the result.
ROBERTS, C.J., filed a dissenting opinion in which LARSEN, J., joined.
ROBERTS, Chief Justice, dissenting.
Once again a majority of this Court awards a publicly funded lifetime pension to a former public official convicted of abusing his office for personal gain, ignoring once again the long-standing principle of common law and common decency that any employee, public or private, who breaches his duty of fidelity must not be permitted to reap a profit from his dishonesty. See Bellomini & Cianfrani v. State Employees' Retirement Board, 498 Pa. 204, 213-18, 445 A.2d 737, 741-44 (1981) (Roberts, J., joined by Larsen, J., dissenting); Miller & Fineman v. State Employees' Retirement Board, 498 Pa. 103, 106-12, 445 A.2d 88, 90-92 (1981) (Roberts, J., joined by Larsen and Kauffman, JJ., in support of reversal). Once again I dissent.
On February 6, 1979, John H. Nacrelli, then Mayor of Chester, was found guilty by a jury in Federal District Court on all five counts of an indictment charging him with participating and conspiring to participate in the conduct of the affairs of the Chester Police Department through a pattern of racketeering activity, conspiracy to obstruct law enforcement with the intent to facilitate an illegal gambling business, and filing false federal income tax returns.
On March 19, 1979, Nacrelli submitted his resignation as Mayor of Chester, to become effective six weeks later on April 27, 1979  a date which would assure Nacrelli's completion of the twenty years of service required for his receipt of retirement benefits. Also on March 19, Nacrelli applied for his pension, with payments to commence on April 28, 1979, the day after his "resignation." Remarkably, Nacrelli's application was immediately approved by appellee Officers and Employees Retirement Board on March 20, the following day. One day later, on March 21, 1979, Nacrelli's postverdict motions were denied, and he was sentenced to a term *304 of six years' imprisonment and a consecutive term of five years' probation.[1]
Notwithstanding the jury's verdict of guilty and the court's imposition of sentence, Nacrelli continued to serve as Mayor of Chester until April 27, after which appellee began making pension payments to him. Following a challenge to the propriety of these payments by the Attorney General of Pennsylvania and the District Attorney of Delaware County, the Court of Common Pleas of Delaware County held, on the authority of Burello v. State Employes' Retirement Board, 49 Pa.Cmwlth. 364, 411 A.2d 852 (1980), that the Forfeiture Act was invalid as an "ex post facto" law when applied to Nacrelli, who had committed all of the crimes for which he was convicted before July 8, 1978, the date of enactment of the Forfeiture Act. This appeal followed.[2]
In the two previous cases before this Court involving the pensions of dishonest public servants, retirement benefits have been awarded, over my dissent, on the theory that, until the enactment of the Forfeiture Act, the requirement of honest public service was not a condition of eligibility for retirement benefits, and that a public servant who has met all previously stated conditions such as age and years of service has "vested rights" which may not constitutionally be impaired. See Bellomini & Cianfrani v. State Employees' Retirement Board, supra, 498 Pa. at 213-18, 445 A.2d at 741-44 (O'Brien, C.J., announcing the judgment of the Court). See also Miller & Fineman v. State Employees' Retirement Board, supra, 498 Pa. at 103, 445 A.2d at 88 (O'Brien, C.J., joined by Flaherty, J., in support of affirmance). Although any theory that rewards public officials for their dishonesty is both untenable and abhorrent, at least *305 the theory previously advanced by some members of this Court limited the special class of public servants entitled to retirement benefits despite their crimes to those public servants who had fulfilled all conditions of eligibility  other than the paramount condition of faithful performance  before the enactment of the Forfeiture Act in 1978.[3] So, too, the "ex post facto" theory relied upon by the court of common pleas, although manifestly erroneous, limits the privileged class of dishonest public servants to those who committed their crimes before July 8, 1978.
On the other hand, the "contract" theory advanced by the opinion of Mr. Justice Nix would permit any public servant who began employment before the enactment of the Forfeiture Act to breach the public trust at any time in the future and still receive a public pension, notwithstanding that opinion's emphatic assertion that "the real and practical need involved is to prevent future wrongdoing." (Opinion of Mr. Justice Nix at 10) (emphasis in original). According to the opinion of Mr. Justice Nix, because the Legislature did not expressly inform Nacrelli and others hired before July of 1978 that commission of a crime in violation of the public trust would result in the loss of their publicly funded pensions, all such employees may breach their duty of fidelity at any time during their service and still retire in comfort at the public's expense.
Whatever may be the merits of a rigid "contract" theory of retirement benefits as applied to amounts of compensation and to technical conditions of eligibility, this theory clearly has no legitimate application to the condition of faithful service. What reasonable expectation could possibly be defeated by the Legislature's explicit recognition of the principle  long embodied in the common law and obvious to common decency and common sense  that an employee who uses his office to defraud the people whom he serves will not receive retirement benefits paid for by the people whom he *306 has defrauded? Where is the unfairness, where is the unreasonable impairment of contract, in the Legislature's giving notice to potential wrongdoers that their future abuses of the public trust will deprive them of a pension? Can it honestly be said that a public employee's legitimate expectations have been unfairly frustrated by this legislative attempt to address a "real and practical need"?
It is, of course, of little comfort that the appalling theory espoused by the opinion of Mr. Justice Nix represents only his view and that of Mr. Justice McDermott, for the fact remains that, once again, a former public official has been rewarded for years of dishonest public service with a lifetime pension at public expense. Manifestly, as should have been done in the cases of Miller, Fineman, Bellomini and Cianfrani, the order approving the payment of pension benefits to convicted felon John Nacrelli should be reversed and this unconscionable misuse of public funds halted once and for all. Common decency, common sense, and common fairness demand nothing less.
LARSEN, J., joins in this dissenting opinion.
NOTES
[1] By Article 145 of a local ordinance authorized by the Act of May 23, 1945, P.L. 903 as amended, 53 P.S. §§ 39371-39384, the present Officers and Employees Optional Retirement System was established. The system contains no provisions for forfeiture of pension rights.
[2] Pertinent provisions of Act 140 are as follows:

Section 3. Disqualification and forfeiture of benefits.
(a) Notwithstanding any other provision of law, no public official or public employee nor any beneficiary designated by such public official or public employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest, if such public official or public employee is convicted or pleads guilty or no defense to any crime related to public office or public employment.
(b) . . . Such conviction or plea shall be deemed to be a breach of a public officer's or public employee's contract with his employer.
(c) Each time a public officer or public employee is elected, appointed, promoted, or otherwise changes a job classification, there is a termination and renewal of the contract for purposes of this act.
* * * * * *
Section 7. Retroactively [sic]
The provisions of this act shall be retroactive to December 1, 1972.
43 P.S. § 1313 and § 1317.
[3] Mr. Nacrelli was indicted in the federal court on May 18, 1978 for the actions upon which he was convicted. The effective date of Section 3 of Act 140 is July 8, 1978, fifty-one (51) days after his indictment. The parties have recognized that the provisions of the Act are only applicable here if the retroactive provision of Section 3 is found to be enforceable. Nothing in this opinion is to be construed as referring to conduct by public officials or employees which occurred on or after July 8, 1978.
[4] Mr. Nacrelli is not a party to this action between the Attorney General and the local district attorney against the Officers and Employees Retirement Board. Any suggestion that Mr. Nacrelli was a party represented by the assistant City Solicitor of the City of Chester or any other counsel is clearly erroneous.
[5] legislature may from time to time, within the confines of that established relation, alter, change, amend, and render intact the actuarial soundness of the system so as to strengthen its fibers in any way it sees fit.
316 Pa. at 176, 174 A. at 407.
[6] for retirement pay is complete as soon as an employee or member of the retirement system has satisfied the conditions requisite for retirement. . . . His rights to such pay are fixed as of the time he attained eligibility. Until retirement pay is earned as above described the right is inchoate. During this period retirement pay is being built up. The inchoate right becomes a complete vested right when the conditions connected with the particular retirement system are complied with. This right cannot be thereafter disturbed by legislation.
330 Pa. at 405-06, 199 A. at 132.
[7] We note the appeal allowed by this Court in Burello was discontinued by the Attorney General on July 9, 1982.
[1] Nacrelli's conviction was subsequently affirmed on appeal, United States v. Nacrelli, 468 F.Supp. 241 (E.D.Pa.1979), aff'd, 614 F.2d 771 (3d Cir.1980).
[2] Incredibly, in addition to receiving thousands of dollars of publicly funded retirement benefits by way of today's decision, convicted felon Nacrelli has been represented throughout these proceedings, including this appeal, at public expense, by the Assistant City Solicitor of the City of Chester.
[3] Under this theory, ex-mayor Nacrelli, who did not fulfill the years-of-service requirement for eligibility until after his conviction, would be denied entitlement to a publicly funded pension, as indeed he should be in any event.