485 A.2d 392

**Maurice OSSER, Appellee,**

**v.**

**CITY OF PHILADELPHIA, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1984.

Decided Dec. 18, 1984.

Mandate Modified March 27, 1985.

Barbara R. Axelrod, Deputy Cty. Sol., Philadelphia, for appellant.

Neil Jokelson, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

Before us is the City of Philadelphia's appeal from the Order and Opinion of the Commonwealth Court reversing the Court of Common Pleas of Philadelphia County and holding that the pension ordinance of the City of Philadelphia, as applied to former Philadelphia City Commissioner Maurice Osser, was an unconstitutional impairment of his contractual rights to pension benefits. 75 Pa.Cmwlth 145, 461 A.2d 639. The court based its holding on our decision in *Commonwealth ex rel. Zimmerman v. Officers and Employees Retirement Board,* (Nacrelli I), 501 Pa. 293, 461 A.2d 593 (1983). Following a review of the record, we find

that the Commonwealth Court misinterpreted our holding in *Nacrelli* and, therefore, reverse.

The facts relevant to the disposition of this appeal can be briefly stated. Appellee Maurice Osser began his employment with the City of Philadelphia as City Commissioner on January 7, 1952, and served in that capacity until December 21, 1972. The date on which Appellee began his employment with the City was also the effective date of Philadelphia's newly-adopted Home Rule Charter, Pa.Code, Title 351. Pursuant to that Charter, the City was required to have the Board of Pensions and Retirement submit to the City Council a pension and retirement plan for all officers and employees of the City. In the interim, the City continued to operate its pension plan under then-existing state law, Act of May 20, 1915, P.L. 566, 53 P.S. § 13431 et seq. On January 1, 1957, the pension plan required under the Philadelphia Home Rule Charter became effective, City of Philadelphia, Pa., Ordinances, p. 883 (December 3, 1956). Under § 105.1 of the ordinance, members covered under the old pension plan had the option to "irrevocably elect" to transfer into the new system or to remain in the old. On July 14, 1958, Appellee elected to transfer into the new system by executing the proper forms and remitting the cost differential between the two plans.

The new system, unlike the old, contained a disqualification section which provided as follows:

**Section 217. Disqualification.**

**217.1.** Notwithstanding any other provision of this Article, no employee nor any beneficiary designated by or for any employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of contribution paid into the Retirement System, without interest, if such employee

(a) pleads or is finally found guilty, or pleads no defense, in any court, to any of the following:

\* \* \* \* \* \*

(2) Acceptance of a bribe for the performance, or affecting the performance or for the nonperformance

of his official duties, or the offering or giving of a bribe to any other City employee or employee of the Commonwealth of Pennsylvania or of United States for the performance or affecting the performance or for the non-performance of his official duties;

(3) Engaging in graft or corruption incident to or in connection with his office or employment constituting a violation of the laws of the Commonwealth of Pennsylvania or the United States;

(4) Theft, embezzlement, wilful misapplication, or other illegal taking of funds or property of the City, or those of any official agency of the City, or agency engaged in performing any governmental function for the City or the Commonwealth of Pennsylvania;

(5) Malfeasance in his office or employment.

\* \* \* \* \* \*

In 1972, Appellee was indicted by a federal grand jury and was tried and convicted of mail fraud, conspiracy, and endeavoring to obstruct a criminal investigation. These charges in part arose from Appellee's attempts to manipulate the bidding for printing contracts and, in so doing, to defraud the City of Philadelphia. On December 20, 1972, Appellee was given a suspended sentence on the condition that he resign from the office of City Commissioner, which he did.

On March 12, 1976, Appellee filed a claim with the Board of Pensions and Retirements, seeking his pension benefits effective as of the date of his resignation. The Board denied this claim. Appellee then filed a Complaint in Assumpsit against the City for payment of his pension benefits, and the City answered by asserting that Appellee had forfeited any right to his benefits pursuant to the disqualification provisions of § 217. The Common Pleas Court of Philadelphia held that Appellee's pension rights had not vested and that § 217 precluded him from collecting any pension benefits. The lower court certified as a controlling question the constitutionality of the pension ordinance, and an appeal was taken by Appellee to the Superior Court

which declined jurisdiction and transferred the matter to Commonwealth Court. 295 Pa.Super. 447, 441 A.2d 1317. Commonwealth Court (Blatt, J.) reversed the findings of the common pleas court and held that under our decision in *Nacrelli*, Section 217 acted as a retroactive impairment of the obligations of contract and was, therefore, unconstitutional.

In reaching the conclusion that § 217 of the Philadelphia Home Rule Charter is a retroactive impairment of Appellee's contract with the City, the Commonwealth Court failed to recognize an important factual distinction between *Nacrelli* and this case. The court correctly noted that in *Nacrelli*, the pensioner was already a member of the pension plan when the Public Employee Pension Forfeiture Act, 43 P.S. § 1311 et seq., came into effect. Following our holding in *Baker v. Retirement Board of Allegheny County*, 374 Pa. 165, 97 A.2d 231 (1953), we found that Act inapplicable to the pensioner because the rights of an employee cannot be adversely affected by *unilateral* governmental changes after his initial membership in the system. In the instant case, however, although he was an employee of the City of Philadelphia prior to the enactment of the new pension plan, Appellee Osser was not a member of that new pension plan until he "irrevocably elected" to transfer into it. The key element under these facts is that the change in the terms of Appellee's pension plan was not a result of a unilateral act of the government, but rather occurred because of a *bilateral* act wherein the Appellee exchanged his old contractual rights for the new obligations and benefits provided under the new pension plan.

Under the Commonwealth Court's interpretation of *Nacrelli*, a pensioner could enjoy the best of both worlds by choosing the benefits of the new pension plan, but claiming the "protections" of the old for purposes of disqualification. This was never the intent, nor is it a logical extension of *Nacrelli*. *Nacrelli* merely protects those who have gained contractual rights from having those rights later affected through the unilateral action of a governmental body. This

is all that the Constitution requires. It does not empower, nor should anyone expect, this Court or any court to rewrite the contractual obligations of parties who bilaterally choose to alter their contractual status. Having chosen to exchange his rights under the old pension program for those of the new, Appellee Osser irrevocably chose to be bound by § 217 of the new plan and is, therefore, not now entitled to receive pension benefits pursuant to that plan.

Order of the Commonwealth Court reversed and the case is remanded to the Commonwealth Court for disposition of the remaining issue as originally certified by the Philadelphia Court of Common Pleas.