# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul J. Thiel,                                    :
                         Petitioner              :
                                                 :
            v.                                   :   No. 740 C.D. 2021
                                                 :   Argued: September 15, 2022
State Employees' Retirement Board,               :
                         Respondent              :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                              FILED:  October 19, 2022

Paul J. Thiel (Petitioner) petitions for review of an order of the State Employees' Retirement Board (Board) that declined to reinstate his retirement benefits after he was convicted of a crime relating to public employment. Petitioner's primary contention is that the Public Employee Pension Forfeiture Act[1] (Act 140) is being retroactively applied to him, in violation of his constitutional rights to be free from ex post facto laws and laws impairing contractual obligations. After careful review, we affirm the Board.

## I.

Petitioner began working for the Commonwealth on April 15, 1985, as a corrections officer with the Department of Corrections (DOC). He worked for DOC

---

[1] Act of July 8, 1978, P.L. 752, No. 140, *as amended*, 43 P.S. §§ 1311-15.

until July 3, 1994, when he accepted a new position as a parole agent with the Pennsylvania Parole Board (Parole Board).[2] Petitioner retired from Commonwealth service on February 26, 2010, at the age of 50. Certified Record (C.R.) Item No. 6, Notes of Testimony (N.T.) from Dec. 16, 2019, Hearing at 8, 13.

As an employee of the Commonwealth, Petitioner was also a member of the State Employees' Retirement System (SERS). Membership in SERS and completion of the requisite years of service entitled him to a retirement pension and health benefits. *See* 71 Pa.C.S. § 5308 (providing for annuity payments to retired Commonwealth employees); 71 Pa.C.S. § 5308(f)(3)(i) (outlining procedure for converting employee health benefits to retirement health benefits).[3] Petitioner retired with 28.1220 years of service. C.R. Item No. 6, SERS Ex. 5 at 3. This included his time with DOC and the Parole Board, as well as time Petitioner purchased in 2007 for service in the United States Marine Corps from July 27, 1977, to July 25, 1980. N.T. at 13; *see also* 71 Pa.C.S. §§ 5304(c)(2)(i), 5505(b) (allowing for purchase of credit for military service).

After retiring from Commonwealth service, Petitioner worked as a part-time police officer for Greenfield Township and the City of Carbondale. Additionally, sometime in 2013, the Parole Board asked Petitioner to become a "return-to-service annuitant," which meant he would resume his employment as a parole agent on a temporary basis to address the Parole Board's increased workload. *See* 71 Pa.C.S. § 5706(a.1) (allowing certain employees receiving retirement benefits to return to

---

[2] The Pennsylvania Board of Probation and Parole has been renamed as the Pennsylvania Parole Board. *See* Sections 15, 16, and 16.1 of the Act of December 18, 2019, P.L. 776, No. 115 (effective February 18, 2020); *see also* Sections 6101 and 6111(a) of the Prisons and Parole Code (Parole Code), *as amended*, 61 Pa. C.S. §§ 6191, 6111(a).

[3] This opinion will refer to the statutory scheme administered by SERS, 71 Pa.C.S. §§ 5101-5958, as the "Retirement Code."

2

service during "an emergency [that] creates an increase in the work load such that there is serious impairment of service to the public").

On April 21, 2014, Petitioner was involved in an incident that led to his conviction for official oppression, in violation of 18 Pa.C.S. § 5301. That evening, while on duty as a patrolman with the Carbondale Police Department (Carbondale PD), Petitioner struck an intoxicated arrestee multiple times with a metal baton and the back of his hand. While the arrestee had been verbally abusive throughout his detention, including by making threats against Petitioner and his family, the arrestee was shackled to a bench and unable to physically harm anyone at the time Petitioner struck him. This incident was captured on video, which the Chief of the Carbondale PD forwarded to the Lackawanna County District Attorney's Office for review. C.R. Item No. 6, SERS Ex. 4. The District Attorney ultimately charged Petitioner with official oppression and simple assault.[4] On April 9, 2015, Petitioner pled guilty to official oppression. *Id.*

More than three years later, on June 28, 2018, SERS mailed a letter to Petitioner indicating his retirement benefits were forfeited as of the date of his guilty plea. Petitioner retained counsel and appealed this determination to the Board, arguing he was not a "public employee" within the meaning of Act 140 at the time of his crime, and that Act 140 could not constitutionally be applied to him. More specifically, Petitioner maintained that because he purchased credit for his service in the Marine Corps from July 27, 1977 to July 25, 1980, the "vesting date" of his retirement benefits should be backdated to July 27, 1977. With this assumption in place, Petitioner argued SERS violated the ex post facto and contracts clauses of the

---

[4] 18 Pa.C.S. § 2701.

United States and Pennsylvania constitutions[5] by retroactively applying Act 140 to him, as that law was not enacted until July of 1978.  *See* Act of July 8, 1978, P.L. 752, No. 140.  Petitioner also argued the forfeiture of his pension was an unconstitutionally excessive fine, in violation of the Eighth Amendment to the United States Constitution.  *See* U.S. CONST. amend. VIII, cl. 1.

The Board appointed a hearing examiner (Hearing Examiner Moyer) to receive evidence and provide a recommended disposition.  Hearing Examiner Moyer held a hearing on December 16, 2019, at which Petitioner and a number of SERS officials testified.  During his testimony, Petitioner admitted he was employed by both the Carbondale PD and the Parole Board when he committed the acts underlying his charges for assault and official oppression, and that he ultimately pled guilty to the latter offense.  N.T. at 24, 44.  SERS's witnesses merely recounted the administrative processes leading to forfeiture of Petitioner's pension; they did not dispute any part of Petitioner's testimony.

Hearing Examiner Moyer left SERS shortly after the December 2019 hearing, which led the Board to appoint a different examiner (Hearing Examiner Kelly) to render a recommendation based on the cold record.  On May 12, 2020, Hearing Examiner Kelly issued a written recommendation that Petitioner's appeal be denied.  On June 4, 2021, the Board adopted this recommendation with minor modifications.  The Board noted it was "not disputed" that Petitioner was employed with the Carbondale PD and as a return-to-service annuitant with the Parole Board at the time of his offense, and that a conviction for official oppression triggers pension forfeiture under Act 140.  C.R. Item No. 18 (Board Opinion) at 11; *see also* Section 2 of Act 140, 43 P.S. § 1312 (defining forfeiture crimes).  Thus, the Board held Petitioner

---

[5] *See* U.S. CONST. art. I, § 10, cl. 1; PA. CONST. art. I, § 17.

was a public employee who forfeited his pension according to the terms of Act 140. The Board rejected Petitioner's ex post facto argument, stating that his purchase of military service credit in 2007 did not "create a retroactive vested right to a pension benefit" dating back to July of 1977. Board Opinion at 16. The Board also held Petitioner was not subject to an unconstitutionally excessive fine because the case "d[id] not involve a fine but a forfeiture"—that is, the Board said the forfeiture of Petitioner's pension flowed from a breach of his retirement contract with SERS and did not constitute punishment for a crime. *Id.* at 19. As such, the excessive fines clause was not implicated.

Petitioner now appeals to this Court.

## II.

As with most appeals from decisions of administrative agencies, our review of a decision of the Board is limited to determining whether the Board violated Petitioner's constitutional rights, adhered to statutory law, followed the procedures for agency adjudications outlined in the Administrative Agency Law,[6] and supported its factual findings with substantial evidence. *Sandusky v. Pa. State Emps. Ret. Bd.*, 127 A.3d 34, 47 n.17 (Pa. Cmwlth. 2015); *see also* 2 Pa.C.S. § 704.

## III.

We begin with Petitioner's contention that the record does not contain substantial evidence to support the Board's conclusion that he was a "public official or public employee" within the meaning of Act 140 when he committed the acts leading to his conviction for official oppression.[7] Substantial evidence is "such

---

[6] *See* 2 Pa.C.S. §§ 501-08.

[7] This section addresses issues 1 and 5 of Petitioner's Statement of Questions Involved, as both issues dispute Petitioner's status as a "public official or public employee" under Act 140. *See* Br. of Petitioner at 4-5.

5

relevant evidence as a reasonable person would accept as sufficient to support a conclusion." *Joyce Outdoor Advert., LLC v. Dept. of Transp.*, 49 A.3d 518, 523 n.2 (Pa. Cmwlth. 2012).

Act 140 provides for forfeiture of a public employee's retirement benefits in the following terms:

> Notwithstanding any other provision of law, no public official or public employee nor any beneficiary designated by such public official or public employee shall be entitled to receive any retirement or other benefit or payment of any kind except a return of the contribution paid into any pension fund without interest, if such public official or public employee is found guilty of a crime related to public office or public employment or pleads guilty or nolo contendere to any crime related to public office or public employment.

Section 3 of Act 140, 43 P.S. § 1313(a). To commit a "crime related to public office or public employment," the public employee must commit one of the trigger offenses enumerated in Act 140 either "through his public office . . . or when his public employment places him in a position to commit the crime." 43 P.S. § 1312. Official oppression in violation of 18 Pa.C.S. § 5301 is one such offense. *Id.* Furthermore, the Act defines the "public official[s]" and "public employee[s]" subject to its provisions as follows:

> **Any person who is elected or appointed to any public office or employment** including justices, judges and magisterial district judges and members of the General Assembly **or who is acting or who has acted in behalf of the Commonwealth or a political subdivision or any agency thereof** including but not limited to any person who has so acted and is otherwise entitled to or is receiving retirement benefits **whether that person is acting on a permanent or temporary basis and whether or not compensated on a full or part-time basis**. This term shall not include independent contractors nor their employees or agents under contract to the Commonwealth or political subdivision nor shall it apply to any person performing tasks over which the Commonwealth or political subdivision has no legal right of control. However, this term shall include all persons who are members of any

6

retirement system funded in whole or in part by the Commonwealth or any political subdivision. For the purposes of this act such persons are deemed to be engaged in public employment.

43 P.S. § 1312 (emphasis added).

The record fully supports the Board's determination that Petitioner met this broad definition. Petitioner's own testimony establishes that, on the day of his offense, he held two positions of public employment: his part-time position with the Carbondale PD and his position with the Parole Board as a return-to-service annuitant. N.T. at 24-7; *see also* Board Opinion at 4. Petitioner was "acting . . . [on] behalf of . . . a political subdivision" of the Commonwealth, namely, the City of Carbondale. 43 P.S. § 1312; *see also id.* (defining "political subdivision" as "[a]ny county, city, borough, incorporated town, [or] township . . . and any . . . departments, instrumentalities, or entities thereof . . . ."). Additionally, Petitioner was "acting . . . [on] behalf of . . . [an] agency . . . [of] the Commonwealth," i.e., the Parole Board. *Id.*; *see also* 42 Pa.C.S. § 102 (defining "Commonwealth agency" as "[a]ny executive or independent agency"); 61 Pa.C.S. § 6111 (establishing Parole Board as "an independent administrative board").[8] Both jobs fall squarely within Act 140's definition of a "public employee."

Petitioner resists this conclusion with two unavailing arguments. First, he argues he should not be considered a "public employee" for Act 140 purposes because he was already retired and receiving benefits at the time he committed his criminal act. The plain text of Act 140 defeats this argument, as the law expressly includes within its sweep public employees who are "entitled to or . . . receiving retirement benefits." *Id.* In past cases, this Court has not hesitated to affirm the

---

[8] Because Act 140 does not specifically define "the Commonwealth . . . or any agency thereof," 43 P.S. § 1312, we rely on the above definition of "Commonwealth agency" from the Judicial Code, 42 Pa.C.S. §§ 101-9914.

7

pension forfeitures of public officials who have begun receiving their retirement annuities but have also accepted part-time public employment. *See, e.g., Miller v. State Emps. Ret. Sys.*, 137 A.3d 674, 675 (Pa. Cmwlth. 2016) (retired magisterial district judge who worked part-time as a senior judge). Indeed, the text of Act 140 anticipates this circumstance by "including . . . any person who . . . is receiving retirement benefits *whether that person is acting on a permanent or temporary basis and whether or not compensated on a full or part-time basis*." 43 P.S. § 1312 (emphasis added).

Next, Petitioner argues he is not an Act 140 "public employee" because he did not commit the crime of official oppression while occupying the positions of public employment through which he earned his pension—that is, his full-time employment with DOC and the Parole Board from 1985 to 2010. This argument is foreclosed by *Matthews v. Public School Employees Retirement Board*, 806 A.2d 971, 975 (Pa. Cmwlth. 2002), where we held that "Act 140 contains no requirement that the pension benefits that are forfeited be necessarily connected to the public employment" that enabled the employee to commit an Act 140 forfeiture crime. *See also DiLacqua v. City of Phila. Bd. of Pensions & Ret.*, 83 A.3d 302, 309-10 (Pa. Cmwlth. 2014) (same). Rather, the Act defines "public employee" in the broadest possible terms, covering any "person who is elected to **any** public office or employment." *Matthews*, 806 A.2d at 974 (emphasis in original). Act 140 "clearly and unambiguously requires a forfeiture of benefits" when any such person commits a "crime related to . . . public employment." *Id.* at 975; 43 P.S. § 1313(a). Accordingly, even though Petitioner did not earn his retirement benefits through his employment with Carbondale PD, that employment still rendered him a "public

8

employee" for Act 140 purposes. We affirm the Board's holding in this regard as supported by substantial evidence.

## IV.

We now turn to Petitioner's argument that forfeiture of his pension pursuant to Act 140 constitutes both ex post facto governmental action and a retroactive impairment of contractual obligations. Both the United States and Pennsylvania constitutions protect against "ex post facto Law[s]." Likewise, both constitutions prohibit laws which "impair[] the Obligation of Contracts . . . ." U.S. CONST. art. I, § 10, cl. 1; *see also* PA. CONST. art. I, § 17. Because these provisions involve a similar analysis, we address Petitioner's arguments concerning them together.[9]

Generally speaking, an ex post facto law is one that "attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). Similarly, a law "impairing the obligation of contracts" retroactively meddles with a preexisting contractual agreement under which the parties have various rights and obligations. The inherent unfairness of retroactive government action is what animates both clauses—they embody the principle that people are entitled to know the legal consequences of their decisions at the time they are made. *See Hickey v. Pension Bd.*, 106 A.2d 233, 237-8 (Pa. 1954).

For the vast majority of workers, accepting employment with the Commonwealth automatically creates a contractual agreement for retirement

---

[9] We also note there is no meaningful difference between the text or doctrine of the federal and state ex post facto clauses, at least as applied to the facts of this case. *See Commonwealth v. Allshouse*, 36 A.3d 163, 184 (Pa. 2012) ("[T]he *ex post facto* clauses of the United States and Pennsylvania Constitutions are virtually identical in language, and the standards applied to determine *ex post facto* violations under both constitutions are comparable.") (citation omitted). We have not located a binding decision holding the same with respect to the contracts clauses of each constitution, but their identical language suggests the same sort of symmetry.

benefits. 71 Pa.C.S. § 5301(a) (providing that, with very limited exceptions, membership in SERS "shall be mandatory as of the effective date of employment for all State employees"); *see also Bowers v. State Emps. Ret. Bd.*, 371 A.2d 1040, 1041 (Pa. Cmwlth. 1977) ("[T]he retirement system creates a contract between the Commonwealth and its employe[e]s . . . ."). Like all contracts, this agreement is a reciprocal exchange of promises and obligations. The Commonwealth obligates itself to provide retirement benefits, but only if the employee satisfies certain conditions, like completing a specified number of years of service. 71 Pa.C.S. § 5308(b) (outlining number of "eligibility points," or years of service, required for annuity payments under different classes of state service). Act 140's requirement to refrain from committing "crime[s] related to public office or public employment" is another such condition. *Shiomos v. State Emps. Ret. Bd.*, 626 A.2d 158, 162 (Pa. 1993) (discussing how "the terms and conditions of Act 140 [are] incorporated into" an employee's "pension contract"). The terms of a public employee's retirement contract are set the moment he begins state service, meaning the laws in effect at that time govern his relationship with the Commonwealth. *Cmwlth. ex rel. Zimmerman v. Officers & Emps. Ret. Bd.*, 461 A.2d 593, 598 (Pa. 1983). That contract can be superseded, however, if the employee accepts a new position of employment after new laws governing SERS membership have been enacted. *Shiomos*, 626 A.2d at 162-63.

Petitioner began working for the Commonwealth on April 15, 1985. N.T. at 19. Act 140 was enacted on July 8, 1978. Therefore, Petitioner's retirement contract with SERS automatically incorporated Act 140's conditions when he was hired—at that moment, he was made aware that his retirement benefits would be forfeited upon his conviction for a "crime related to . . . public employment." 43 P.S. § 1313(a).

10

Despite this, Petitioner argues that because he later purchased credit for a period of military service starting on July 27, 1977, his state employment should be deemed to start on that date. *See* Br. of Petitioner at 16 ("Mr. Thiel's purchasing of 2.9972 years of active duty military service covering the period commencing on July 27th, 1977 placed his retirement contract date such that his retirement benefits had vested prior to July 8, 1978 . . . .") (internal citation and quotation marks omitted). This, in turn, allegedly makes his Act 140 forfeiture "retroactive" and an impairment of his settled contractual rights. *Id.* at 17-18.

This argument fails. As noted, a state employee's "contractual rights vest . . . at the time of his membership in the retirement system," i.e., on the date employment begins.[10] *Zimmerman*, 461 A.2d at 597. There is no indication in the Retirement Code that purchasing credit for military service alters the effective date of an employee's membership in SERS. *See* 71 Pa.C.S. § 5304(c)(1)-(2) (defining types of military service for which an employee may purchase credit); 71 Pa.C.S. § 5505(b) (providing formula for calculating cost of military service credit). Petitioner's contractual arrangement with SERS is a creature of statute—as such, he has "only those rights [expressly] granted by the Retirement Code." *Weaver v. State Emps. Ret. Bd.*, 129 A.3d 585, 589 (Pa. Cmwlth. 2015). Therefore, because the Retirement Code does not provide that the purchase of credit for military service has

---

[10] To avoid confusion, we note the Pennsylvania Supreme Court has used the term "vesting" in two distinct senses in its pension forfeiture cases. The first is the sense noted above, meaning the establishment of a retirement contract with SERS. *Zimmerman*, 461 A.2d at 597. The second refers to the moment when an employee satisfies all eligibility criteria under the Retirement Code and becomes entitled to claim retirement benefits. *See Shiomos*, 626 A.2d at 160 ("Appellant's entitlement to receive retirement benefits . . . vested on July 30, 1979, when he purchased 3.3778 years of military service, thus crediting him with the necessary ten years of service."). The first sense of the term is implicated here.

the "backdating" effect urged by Petitioner, there is simply no legal basis for Petitioner's argument.[11]

Furthermore, even if Petitioner's 2007 purchase of military service credit somehow retroactively altered his contractual "vesting" date to July 27, 1977, he would still be subject to the terms of Act 140 by virtue of his subsequent acceptance of new positions of public employment. Act 140 provides that "[e]ach time a . . . public employee is elected, appointed, promoted, or otherwise changes a job classification, there is a termination and renewal of the contract for purposes of this act." 43 P.S. § 1313(c). Under this provision,

> [w]ith each appointment there is a renewal of the agreement to perform the term of public service without violating Act 140; an agreement which encompasses all that has gone before. Thus, whether or not a public employee's right to receive retirement benefits has vested, or he or she is in actual receipt of benefits, all previous accumulated rights to receive such benefits are subject to forfeiture by and through the "renewed" agreement which is formed each time a person chooses to become a "public official" as defined by [43 P.S.] § 1312.

*Shiomos*, 626 A.2d at 162-3. Thus, even if his 2007 purchase of military service credit gave him a "clean slate" for Act 140 purposes, Petitioner's subsequent acceptance of part-time police officer positions with Greenfield Township and the City of Carbondale constituted acceptance of Act 140's conditions on his retirement contract with SERS.

The foregoing analysis demonstrates that Act 140 was never retroactively applied to Petitioner. That law's condition that state employees must refrain from committing "crime[s] related to . . . public employment," 43 P.S. § 1313(a), or risk pension forfeiture was part of Petitioner's contract with SERS when he began Commonwealth service in 1985 and was reaffirmed with each subsequent change in

---

[11] Petitioner does not cite to the Retirement Code or any other statute to support his novel argument.

12

his job title. His purchase of military service credit in 2007—well after the enactment of Act 140 and his own constructive awareness thereof—did nothing to change that. As such, SERS's forfeiture decision did not "disrupt . . . [Petitioner's] settled expectations," *Landgraf*, 511 U.S. at 266, or retroactively alter his retirement contract. Accordingly, no violation of the ex post facto or contracts clauses occurred, and we affirm the Board's holding in this regard.[12]

## V.

Petitioner also argues the forfeiture of his pension constitutes an "excessive fine," in violation of the Eighth Amendment to the United States Constitution. *See* U.S. CONST. amend. VIII, cl. 1. We rejected an identical argument in *Scarantino v. Public School Employees Retirement Board*, 68 A.3d 375 (Pa. Cmwlth. 2013). There, we held that pension forfeiture under Act 140 does not implicate the excessive fines clause because that clause only applies to fines imposed as punishment for a crime. *Id.* at 384-85. Rather than a punitive fine, Act 140 forfeiture is a civil consequence of "a breach of the contract between [the public employee] and . . . SERS." *Id.* at 385; *see also* 43 P.S. § 1313(b) (providing that conviction for crime related to public employment "shall be deemed . . . a breach of a public officer's or public employee's contract with his employer"). We reaffirmed this holding in *Miller*, 137 A.3d at 680-81, and see no reason to depart from it today. Therefore, we affirm the Board's rejection of Petitioner's excessive fines argument.

---

[12] We note in passing that Petitioner's case is completely unlike *Bellomini v. State Employees Retirement Board*, 445 A.2d 737 (Pa. 1982), on which he places heavy reliance. That case involved plaintiffs who "had obviously met all of the requirements necessary to receive retirement pay" before the enactment of Act 140. *Id.* at 741. For the reasons given above, that is not Petitioner's situation.

## VI.

Lastly, we note that Petitioner's final issue—whether he was denied due process when a hearing examiner who did not preside over the hearing in this matter issued a recommendation to the Board based on the cold record, alone—is waived for failure to develop the issue in the argument section of his brief. *In re Condemnation ex rel. Dep't of Transp.*, 76 A.3d 101, 106 n.8 (Pa. Cmwlth. 2013) ("[W]here issues are raised in the statement of questions involved, but not addressed in the argument section of the brief, courts find waiver.") (citing *Harvilla v. Delcamp*, 555 A.2d 763, 764 n.1 (Pa. 1989)). And even if the issue were not waived, it is nonetheless without merit. We have held that "administrative adjudicators are permitted to determine the credibility of testimony from the reading of a transcript," *Cavanaugh v. Fayette County Zoning Hearing Board*, 700 A.2d 1353, 1355-56 (Pa. 1997), and that "[a]n adjudicative method where the ultimate decision in a case is made by an administrative fact finder who did not hear the testimony does not deny a litigant due process of law." *Fisler v. State Sys. of Higher Educ.*, 78 A.3d 30, 42 n.13 (Pa. Cmwlth. 2013) (quoting *Cavanaugh*, 700 A.2d at 1356). Furthermore, the credibility of Petitioner's testimony was irrelevant to the outcome of his appeal because he conceded all the legally relevant facts, namely, that he held positions of public employment at the time of his crime and that he pled guilty to a triggering offense.

## VII.

In conclusion, we affirm the forfeiture of Petitioner's retirement benefits solely because Act 140's requirements for such a forfeiture have been met. While working as a part-time police officer, Petitioner pled guilty to a crime that was indisputably "related to public office or public employment." 43 P.S. § 1313(a).

Act 140's command to refrain from such crimes was part of Petitioner's contract with SERS from his first day of Commonwealth service—it was not sprung on him after-the-fact, as he claims in this appeal. We may not reverse Petitioner's forfeiture out of sympathy for his personal circumstances—the law leaves no room for that. *See Apgar v. State Emps. Ret. Sys.*, 655 A.2d 185, 189 (Pa. Cmwlth. 1994) (in the face of employee's guilty plea, refusing to consider employee's claim that racial bias motivated investigation against her for crimes related to public employment). Instead, we may only enforce the plain terms of Act 140, which require a forfeiture in this instance. The decision of the Board is therefore affirmed.

_____
STACY WALLACE, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paul J. Thiel,                                    :
                    Petitioner           :
                                :
       v.                                           :   No. 740 C.D. 2021
                                :
State Employees' Retirement Board,    :
                Respondent        :

# **O R D E R**

      **AND NOW**, this 19th day of October 2022, the June 4, 2021 Order of the State Employees' Retirement Board is **AFFIRMED**.

                                      _____
                                      STACY WALLACE, Judge